Kenneth SHELL and Dorothy Shell, Plaintiffs–Appellants,

v.

Raymond SHELL and Dorothy Farrell, as Co–executors of the Estate of Purl D. Shell, Raymond Shell and Dorothy Farrell, as Individuals, Benjamin Farrell, Jr. and Nancy L. Farrell, Nodaway Valley Bank of Maryville, Missouri, Carl Graham, Ed Brown and Ambrose Berg, Defendants–Respondents,

v.

Ada Mae NELSON, Helen Rice, Bonnie Lee Heriford, Danny James Shell, Kirby Shell, Dinah Shell Gaa, Rudy Shell (Deceased, by Eldon H. Asbell, Administrator of the Estate of Rudy Shell), and Dixie Shell Barber (Michael), Third–Party Defendants–Respondents.

No. WD 30899.

Missouri Court of Appeals, Western District.

Sept. 2, 1980.

Frank H. Strong, Roger M. Prokes, Maryville, for plaintiffs–appellants.

W. H. Utz, Jr., Frank Thackery, St. Joseph, for defendants–respondents Raymond Shell and Dorothy Farrell, as Co–Executors of the Estate of Purl D. Shell and as Individuals.

Larry L. Zahnd, Maryville, for defendants–respondents Nodaway Valley Bank, Carl Graham, Ed Brown, Ambrose Berg.

J. Nelson Happy, Kansas City, for third–party defendants–respondents Ada Mae Nelson and Bonnie Lee Heriford.

John H. Fraze, Maryville, for third–party defendant–respondent Eldon H. Asbell, Adm. of the estate of Rudy Shell.

James W. Whan, Maryville, for defendants–respondents Benjamin Farrell and Nancy L. Farrell.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

In this multiple–party, multiple–claim action arising out of a real estate contract for the sale of farm property, three counts of plaintiffs' five–count petition were severed for separate trial to the court. The judgment was adverse to plaintiffs' contentions that reformation and other relief be granted them and, after designation of that judgment under Rule 81.06 as final for purposes of appeal, plaintiffs now contend error in the result adjudged. Upon the grounds hereafter stated, the appeal is dismissed as premature.

A statement of facts and recitation of the claims, cross claims and counterclaims by the numerous parties to this action cannot be avoided because these details are pertinent to analysis of the dispositive question— are the detached claims of the plaintiffs susceptible of final, independent resolution? Also requiring consideration is the related question of the latitude which Rule 81.06 accords the trial court to designate partial judgments as final and, hence, to present cases for appellate review piecemeal.

The present controversy had its inception on December 9, 1974, when Purl D. Shell entered into an agreement for a deferred sale to his sons, Kenneth and Raymond, of approximately 385 acres of land in Nodaway County. Purl Shell was a widower at the time and of advanced age. The agreement gave Kenneth and Raymond the opportunity to acquire the real estate during a period of nineteen months following the death of Purl Shell. The price was to be ascertained by appraisal as of the date of death and the sale proceeds were to be distributed by the executors of the estate as provided in Purl Shell's will.

Although the agreement provided only for a sale of the entire tract to both sons, a division of the property had apparently been arranged. This division was evidenced by two deeds which Purl Shell executed, one to Kenneth and his wife and one to Raymond and his wife. To implement the deferred features of the agreement, the services of the Nodaway Valley Bank, a defendant in this case, were enlisted to act as escrow agent and the two deeds were deposited with it. Also deposited with the bank were certificates of deposit amounting to $20,000.00 payable to Kenneth and Raymond. These were indicated to be earnest money to be credited on the sale price.

The appraisal, which would establish the price for the property, was directed by the agreement to be obtained from three appraisers, two selected by the interested parties and a third chosen by the first two. After the value had been set, Kenneth and Raymond were entitled to obtain the deeds from the bank upon payment of the purchase price. The sums so received were to be paid over by the bank to the executors of the Purl Shell estate. The bank was named in the agreement but the bank did not execute the document and no separate escrow agreement was drawn.

Purl Shell died February 15, 1976. Selection of the appraisers, Ed Brown, Carl Graham and Ambrose Berg, also defendants in the case, was promptly made and their report was given April 26, 1976. The total tract as described in the sale contract was valued by the appraisers at "$288,750 or $750 per acre." The appraisers separately valued the tract described in the deed to Raymond at $58,725.00. To reach a value of the property included in the deed to Kenneth, the appraisers merely deducted $58,725.00 from the total and reached a figure of $230,025.00, a calculation which was challenged in this suit.

Although Kenneth and Raymond were entitled to defer their purchases for nineteen months, Raymond elected to close ear-

lier, he paid his share of the price and received his deed from the bank December 2, 1976. The money so paid, $58,725.00, was credited by deposit to the account of the Purl Shell estate. Executors of the estate were Raymond and his sister Dorothy Farrell, also defendants in the case, both individually and in their representative capacities.

Kenneth was dissatisfied with the report of appraisers Brown, Graham and Berg, primarily because he believed the acreage content of the larger tract assigned to him had been overestimated. It was his opinion, supported to some extent by an independent land survey, that after excluding highway and railroad right-of-way, a multiplication of the per-acre price set by the appraisers, $750.00, times the acreage, resulted in a price of $209,376.00 rather than $230,025.00 as calculated by the appraisers through deduction of the price set for Raymond's purchase. Also of concern to Kenneth was the occupancy of the land by defendants Benjamin and Nancy Farrell who had obtained a three-year lease extension from Purl Shell executed before the latter's death but effective March 1, 1976.

After unsuccessfully attempting to resolve the controversy over the price to be paid to obtain the deed held by the bank, Kenneth and his wife instituted this action by a five-count petition. Count I sought damages against Raymond Shell and Dorothy Farrell as co-executors of the Purl Shell estate and individually for various acts of negligence and deliberate wrongdoing in managing the property in question and in obstructing Kenneth's attempts to conclude the contract purchase. Counts II and III named the appraisers and the bank as defendants and sought a "reformation" of the appraisal and direction that the bank close the sale at the revised price of the reformed appraisal. Count IV was against Benjamin and Nancy Farrell and sought termination of their lease and damages. Count V against the bank and the co-executors sought an extension of the time for plaintiffs to conclude the purchase pending final determination of the litigation and also asked construction of the contract as to the date for the purchasers to acquire possession, a problem attributable to the tenancy of Benjamin and Nancy Farrell under the post-mortem lease extension. At the time suit was filed, expiration of the nineteenth-month period was imminent and, in fact, the date passed before the pleading in the case closed.

Defendant Nodaway Valley Bank answered Counts III and V of plaintiffs' petition and filed a counterclaim against plaintiffs and defendants Raymond Shell and Dorothy Farrell and a cross claim interpleading by a third-party petition some eight additional third-party defendants identified as heirs at law, devisees and beneficiaries of Purl Shell, deceased, not already parties to the action. The contract contained no provisions for remedies on default by the buyers and no instructions for disposition of the earnest money deposit if the funds were not applied to payment of the purchase price. The bank therefore alleged in its cross claim and counterclaim its position as a stakeholder and asked instructions for delivery of the remaining deed and disposition of the escrowed funds.

Defendants Raymond Shell and Dorothy Farrell answered Counts I and V of plaintiffs' petition and, individually and as co-executors, they counterclaimed against plaintiffs and cross claimed against other defendants. They asserted that the nineteenth-month period available for plaintiffs to conclude the real estate purchase had passed subsequent to the filing of plaintiffs' petition but before filing the counterclaim and cross claims and that plaintiffs by their default had forfeited any entitlement to performance of the agreement because they had made no tender of any purchase price payment. Upon this theory, Raymond and Dorothy contended that title to the property had passed to the heirs of Purl Shell, there being no devise of the real estate by will, and because the heirs were numerous and the land was not divisible in kind, they asked the court to decree a sale in partition.

Defendant appraisers Brown, Graham and Berg answered Count II by way of a

general denial and asked no affirmative relief.

Third–party defendants Ada Mae Nelson and Bonnie Lee Heriford, who were heirs and devisees of Purl Shell and who had entered the case by the vehicle of the bank's third–party petition, filed third–party counterclaims and cross claims. Nelson and Heriford contended that the agreement made by Purl Shell on December 9, 1974 created no rights in plaintiffs or in defendant Raymond Shell because the contract was an attempt to accomplish a post–mortem property disposition and not being drawn or executed in the manner required of testamentary documents, it was invalid from inception. The bank was charged with negligence and misconduct in delivering the deed to Raymond when it should have perceived the defects in the contract. Nelson and Heriford also cross claimed against Raymond Shell and Dorothy Farrell alleging that they had engaged in self dealing as co–executors and had wasted and mismanaged estate assets. Damages against the bank, Raymond and Dorothy were sought as well as reconveyance of the land which had been acquired by Raymond through the escrowed deed, removal of the co–executors and an accounting and restitution.

Defendants Benjamin and Nancy Farrell, the leasehold tenants, answered Count IV of plaintiffs' petition by a general denial. Answers and replies were filed by all the various counterclaim and cross claim defendants except that some of the heirs and devisees named in the third–party proceedings defaulted.

When the case was called for trial, plaintiffs' counsel announced his understanding to be that the court would try the "equitable issues," Counts II, III and V, and that other aspects of the case would be tried later. Although no objection to this procedure was lodged, no motion for a separate trial of these claims had been filed and no order defined the claims then to be adjudicated.[1]

The subject of this appeal is a partial judgment entered on Counts II, III and V on the motion of defendants at the close of plaintiffs' evidence. By its content, the judgment only purports to decide that plaintiffs were bound to the price set by the appraisers and that they had lost their opportunity to purchase in any event because they had failed to tender payment within the time limit fixed in the agreement. For reasons not apparent in this record, the trial court heard no evidence and entered no judgment on the counterclaims of defendants who were parties to the petition counts tried. Thus, the bank received no direction for disposition of the escrowed deed and earnest money and the status of title to the property placed in issue by the pleading of the co–executors was not determined.

■ The cross claims of the various parties were not heard and, in particular, no adjudication was had on the contention of third–party defendants Nelson and Heriford that the December 1974 agreement was inoperative and void. Despite this, however, counsel for Nelson and Heriford participated in the trial and cross–examined witnesses. The partial judgment entered was designated final by the trial court and "appealable by any of the interested parties."[2]

■ This partial judgment which does not dispose of all issues and all parties is presented for appellate review as a final judgment only because of the appended order designating it as final. Such designation is not conclusive. Whether a judgment is final and appealable is not determined by the name applied but by what is actually done according to the content, substance and effect of the order entered. *Starnes v. Aetna Casualty and Surety Company*, 503

1. Earlier, defendants Benjamin and Nancy Farrell had moved for severance of Count IV and an order to this effect was made. That count, however, was interrelated to Count V because of the issue of possession.

2. The intent of this specification is uncertain. Parties to the action not named as defendants in Counts II, III and V are not bound by the judgment, cannot claim aggrievement thereby and would have no standing to appeal.

S.W.2d 129 (Mo.App. 1973). It is the duty of an appellate court, sua sponte if necessary, to determine if a final appealable judgment has been rendered before consideration be given to the merits of the case. *Morris v. Patterson*, 549 S.W.2d 613 (Mo. App. 1977); *Anderson v. Metcalf*, 300 S.W.2d 377 (Mo. 1957). Inquiry here must therefore first determine if the partial judgment designated as final by the trial court actually qualifies as such. This, in turn, leads to analysis of Rule 81.06 which authorizes the trial court to designate a partial judgment final for purposes of appeal and Rule 66.02 which authorizes separate trials.

Rule 81.06 contemplates by its language that it will apply where separate trial of a claim has been ordered. Rule 66.02 authorizes the court to order the separate trial of a claim for convenience, avoidance of prejudice or for expedition and economy. Thus, the measure for application of Rule 81.06 depends on the standards of Rule 66.02 for justification of the initial order which fragmented the trial.

■ In the subject case, no order for separate trial was entered and, thus, no enumeration of the purpose served or even of the claims severed indicates the basis for the separate trial. The validity of the trial court procedure carving out for independent resolution the three counts of plaintiffs' petition therefore depends on whether this process was judicially expeditious and convenient or avoided some potential prejudice. If these objectives as described in Rule 66.02 were not advanced, then the partial judgment is no more than that, and the trial court's designation of finality does not transform a nonfinal judgment into a judgment reviewable on appeal.

From the description previously given of the claims, counterclaims and cross claims of the various parties here, it is apparent that severance and disposition of plaintiffs' Counts II, III and V and the presentation of the partial judgment for appellate review has not furthered any of the objectives set out in Rule 66.02, but rather has delayed and confused disposition of the remaining issues and parties.

The subject common to all the claims and cross claims in this case and the source of any rights plaintiffs may have to acquire the real estate or to establish a purchase price is the agreement of December 9, 1974. If the record here be construed to show an implied order for separate trial of issues as to the price which should have been set by the appraisers for plaintiffs' purchase and the time within which the purchase may be concluded, such order must necessarily assume the subsistence of a valid contract. Obviously, if the contract itself fails, then claims contesting implementation of the contract and the exercise of rights originating in the contract are moot and adjudication of such claims is an empty exercise.

Separate trial of plaintiffs' Counts II, III and V overlooks the direct challenge leveled by third–party defendants Nelson and Heriford to the validity of the 1974 agreement. In their pleading, Nelson and Heriford contend that executory provisions effective after the death of Purl Shell label the agreement as a testamentary disposition and because not in a form required of wills, the agreement is invalid. Without comments on the merits of this contention which has yet to be judicially examined, the fact remains that judicial expedition and economy are not served by separately trying disputes as to interpretation and application of the agreement when the possibility remains that on subsequent trial the court may determine that the agreement was void.

■ Evolution of the Rule 81.06 concept is treated at length in *Spires v. Edgar*, 513 S.W.2d 372 (Mo. banc 1974), where earlier cases, particularly *Dotson v. E. W. Bacharach, Inc.*, 325 S.W.2d 737 (Mo. 1959), are reviewed. While *Spires, Dotson* and the other cases there noted involved partial dispositions by dismissal on motion rather than by separate trials, the *Spires* court analyzes the Rule 81.06 application to be where trial of the remainder of the case may be prejudiced unless final adjudication is had on the validity of the partial disposition. In a case as here where separate trial is had, the same concept, which is also expressed in

Rule 66.02, anticipates that a partial disposition qualifies for designation of finality and for appellate review only if the remainder of the claims are in some way dependent on that disposition and if prejudice may be avoided or judicial economy may be served by appellate decision on the partial judgment.

The present case does not satisfy this condition, at least as to the three counts of plaintiffs' petition on which judgment was entered. Particularly as to the claims of defendants Nelson and Heriford, the partial judgment assumes a contingent aspect dependent on the later disposition of those claims. This dependency characterizing mutually exclusive claims was noted in a case arising on similar facts, *Baumstark v. Jordan*, 540 S.W.2d 611 (Mo.App. 1976), where action was brought for specific performance of a real estate sale contract. Defendant filed a counterclaim alleging the contract was void because of undue influence and fraud. The partial judgment appealed refused specific performance, affirmed the contract clause providing liquidated damages but reserved the counterclaim for future disposition. Although the trial court failed to designate the partial judgment as final and Rule 81.06 was therefore not directly in issue as here, the court observed that even were some exception applicable to characterize the partial judgment as final, such a procedure is not appropriate in the context of a mutually exclusive claim and counterclaim. *Baumstark* at 612.

The procedure in the present case also suffers from additional infirmities at odds with Rule 66.02 objectives. At issue in the counts of plaintiffs' petition tried were not only the purchase price and time within which plaintiffs could obtain performance of the sale agreement, but the related claims by and against the bank and the co-executors. Even were the partial judgment to be affirmed on this appeal, the bank has no direction as to disposition of the escrowed deed and earnest money, it has not been assessed damages or absolved of liability and the title status of the land has yet to be determined. Other claims by

plaintiffs continue them as active litigants, not the least of which is the question as to disposition of the certificate of deposit in their name held by the bank in escrow.

In *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597 (1953), the court characterized the partial disposition which is a proper subject for appellate review as a "judicial unit," that is, a judgment which terminates the action with respect to the claim adjudged. The court in *State v. Smith*, 303 S.W.2d 120 (Mo. 1957), rejected an order on a part of a claim not disposing of the whole as failing to qualify as a judicial unit. The partial judgment designated final under Rule 81.06 was accepted in *Johnson v. Great Heritage Life Insurance Co.*, 490 S.W.2d 686 (Mo.App. 1973), because it disposed of the rights of two of the parties and, so far as they were concerned, no issues remained pending.

█ The circumstances of each case control, but the general tenor of the authorities is consistent. While the trial court may render a partial disposition a final judgment for appeal by designating it such, the claims and parties separated and the result adjudged must constitute an independent unit which finally disposes of the claims and the parties within the unit. This the present partial judgment does not accomplish and it fails of finality on that account.

█ Finally, it is necessary to observe that in non–jury trials, Rule 81.06 gives the trial court discretion to designate the partial judgment as final and such discretion is to be exercised by the trial court, not by the appellate court. *Pizzo v. Pizzo*, 365 Mo. 1224, 295 S.W.2d 377 (Mo. banc 1956). Orders stemming from the exercise of discretionary authority are, however, reviewable on appeal because the ultimate responsibility rests with the court of final result. *Anderson v. Robertson*, 402 S.W.2d 589 (Mo. App. 1966). The difficulty lies in distinguishing among types of discretion and applying the proper standard of review to each. Cases which address the question on the basis of "abuse of discretion" are of little value. *Stapleton v. Griewe*, 602 S.W.2d 810, handed down July 8, 1980, by

**192**

Missouri Court of Appeals, Western District.

Case law has often conveyed the impression that discretionary acts by the trial court are rarely, if ever, overturned on appeal. Certainly strong grounds exist to defer to the trial court in discretionary matters dependent on events of the moment, the sense to be gained only at the time in the courtroom, the "you are there" reasoning discussed by Maurice Rosenberg quoted in Aldisert, The Judicial Process, pp. 761–766 (1976). Frequently, however, no superior position of the trial judge endows his discretionary choice with deference in those situations as here where the relevant factors may be examined with equal insight at each judicial level.

In non–jury Rule 81.06 cases, there may in fact be two choices inherent in the discretionary process. The first is the decision to sever a portion of the case for separate trial and thus generate a judgment which does not partake of finality because it does not dispose of all issues and all parties. The second choice is to designate the partial judgment final for purposes of appeal. Because this latter designation may not be demanded of right by any party, the discretionary choice is probably review limited if the separate trial was compatible with the objectives of Rule 66.02 and if the designation of finality does not prejudice or confuse remaining parties and claims.

In the present case, both discretionary choices, the severance of plaintiffs' Counts II, III and V and the designation of the judgment as final and appealable were available to the trial court, but they were unsound, not because this court simply sees an alternate choice as better, but because, for the reasons previously stated at length, the severance of the claims tried and the designation of the partial judgment as final exceeded the subjects to which such process may be applied.

The appeal is dismissed as premature.

All concur.