In the matter of the ESTATE OF Errington R. CURTIS, Deceased.

Roger Andrew CARNAHAN, Personal Representative, Plaintiff-Respondent,

v.

Sarah CURTIS, Roy Duncan, and Elaine Wiggs, Defendants-Respondents,

Marcella Duncan, Defendant-Appellant.

No. 12944.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 29, 1983.

Roger A. Carnahan, Rolla, for plaintiff-respondent.

John D. Beger, Salem, for defendant-respondent Howard Jones, Guardian of Sarah Curtis, Incompetent.

Jay White, Rolla, Morton K. Lange, Cuba, for defendant-appellant.

PER CURIAM.

The Personal Representative of the Estate of Errington R. Curtis, deceased, instituted this proceeding under § 473.340 to determine title to 28 items of personal property. Errington R. Curtis died intestate. The defendants were the decedent's widow, Sarah Curtis, and two daughters by a prior marriage, Marcella Duncan and Elaine Wiggs. Roy Duncan, husband of Marcella was also joined. A hearing was held upon the Personal Representative's petition for the announced purpose of determining title to six enumerated certificates of deposit and a designated savings account. For the purpose of this appeal it may be conceded those certificates of deposit and the savings account were held in a statutory joint tenancy between the decedent and Marcella Duncan. The day of the hearing the guardian of the widow filed an instrument purporting to constitute an election to treat those items and others as a testamentary disposition per § 474.150. The Probate Division of the Circuit Court found two of those certificates of deposit had been issued

before the decedent's marriage to Sarah Curtis and adjudged the same to be the property of Marcella Duncan. However, it found that four certificates of deposit and the savings account in the name of E.R. Curtis or Marcella Duncan were so established in fraud of the marital rights of Sarah Curtis. It was further determined the proceeds thereof "should be delivered over to the personal representative of the estate for payment of debts, expenses and distribution as provided by law." Marcella Duncan was ordered to pay the proceeds of those intangibles to the Personal Representative. Marcella Duncan has appealed.

By her brief Marcella Duncan asserts this was a final judgment for the purpose of appeal. By their joint brief as respondents, the Personal Representative and the widow, Sarah Curtis, concede this to be true. Nonetheless, it is the duty of this court, sua sponte, to determine if, in fact, an appeal lies from that judgment. *Shell v. Shell,* 605 S.W.2d 185 (Mo.App. 1980). This determination must be made upon the basis of the statutes and rules applicable to procedures in and appeals from the Probate Division of the Circuit Court in general, and to a proceeding to discover assets under § 473.340 in particular. *State ex rel. St. Hwy. Com'n v. Armacost Motors, Inc.,* 502 S.W.2d 330 (Mo.1973).

E.R. Curtis died May 19, 1981. The Probate Code resulting from the Revision of 1980 is applicable. § 472.005. Under the provisions of § 472.160, any interested person aggrieved may appeal from an order, judgment or decree of the Probate Division in thirteen specifically defined categories. The judgment in question does not fall within those categories. However, with certain exceptions not applicable to this case, such an appeal may also be taken "[i]n all other cases where there is a final order or judgment of the probate division of the circuit court under this code . . . ." § 472.-160.1(14). Substantially similar language is found in § 512.020. The parties by implication concede that, in the absence of a statute or rule providing otherwise, for a judgment to be final within this language, it

must determine the rights of all the parties concerning all the issues in the proceeding. *State ex rel. Townsend v. Holtcamp,* 330 Mo. 1101, 55 S.W.2d 428 (banc 1932); *In re Estate of Ritter,* 510 S.W.2d 188 (Mo.App. 1974). They likewise concede the judgment in question does not meet that standard. However, they contend the judgment is final for purpose of appeal by reason of Rule 81.06.

The statutory Civil Code does not apply to practice and procedure in the Probate Division of the Circuit Court "except to the extent that such provisions are otherwise specifically made applicable." § 506.010.2. Generally, Rules 41 through 101, except Rules 56 through 62, are not applicable to proceedings governed by the Probate Code. Rule 41.01(a)(2) and (c). The Judge of the Probate Division did not order that any or all of Rule 41 through 101 should be applicable to this matter. Rule 41.01(e). However, it has been the experience in some courts that certain civil rules, including Rule 81.06, should be invoked in every adversary probate proceeding. Borron, Jurisdiction and Practice in the Probate Division Under the Court Reform Act, 36 Mo.B.J. 13, 20 (1980).

A proceeding under § 473.340 falls within the definition of an adversary probate proceeding. § 472.140.2. An adversary probate proceeding is to be conducted, as nearly as practicable, in accordance with the rules of civil procedure. § 472.141.1. More specifically, in any proceeding under § 473.340 "[s]ervice of summons, petition and answer thereto together with *all subsequent proceedings* shall be governed by the Missouri Rules of Civil Procedure." § 473.-340.2. (Emphasis added). All appeals from the Probate Division shall be taken within the time prescribed by the rules of civil procedure relating to appeals. § 472.180. Such appeals shall be taken in accordance with the rules of civil procedure relating to appeals. § 472.210. These statutes and rules do not spell out precisely the extent to which the statutory code of civil procedure and the Rules shall be applied to each of the numerous probate proceedings and appeals

therefrom. Those guidelines must be developed upon a case by case basis.

■■■ The Probate Code does not by statute more explicitly define a final judgment. Nor does it other than by reference prescribe the time within which an appeal must be taken after a judgment has become final. By necessity, and by statutory direction, such determinations are to be made under the Rules. Rule 81.06 refers to final judgments for the purpose of appeal within the meaning of § 512.020. Section 512.020 is a part of the Code of Civil Procedure as adopted in 1943. That code is not per se applicable to proceedings in the Probate Division of the Circuit Court, except to the extent such provisions are otherwise specifically made applicable. § 506.010.2. However, as noted, § 472.160.1(14) specifically applicable to the Probate Division authorizes an appeal from a final order or judgment in substantially the same language contained in § 512.020. Even though Rule 81.06 was drafted in reference to § 512.020, it is practicable to apply that rule to this adversary proceeding. By necessity and statutory direction, that seems to have been the intent of the legislature. The statutes cited above dealing with the right of appeal are sufficiently clear to make Rule 81.06 applicable notwithstanding the restrictions of § 506.010.2 and Mo. Const. Art. V, § 5.

The part of Rule 81.06 directly applicable reads as follows:

When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal within the meaning of § 512.020, RSMo, unless specifically so designated by the court in the judgment entered. However, when a separate trial is had before the court without a jury of an entirely separate and independent claim unrelated to any other claims stated or joined in the case, then the judgment shall be deemed a final judgment ... unless the court orders it entered as an interlocutory judg-

ment to be held in abeyance.... Rule 81.06.

The second quoted sentence of the Rule has been construed in context with the remainder of the Rule and other Rules in several cases. *Welch v. Continental Placement, Inc.,* 583 S.W.2d 251 (Mo.App.1979); *State ex rel. Ashcroft v. Gibbar,* 575 S.W.2d 924 (Mo.App.1978). The general applicability of the quoted sentence of Rule 81.06 has recently received the following expression: "[T]he claims and parties separated and the result adjudged must constitute an independent unit which finally disposes of the claims and the parties within the unit." *Shell v. Shell,* supra, at 191.

To determine if the judgment in question is final by reason of Rule 81.06, it is necessary to consider in more detail the status of the pleadings in the proceedings under § 473.340. The petition of the Personal Representative was in three counts. Count I purported to state a cause of action against Roy and Marcella Duncan. In that count he alleged there was "certain money and other personal property of decedent ... in the possession ... of defendants Roy Duncan and Marcella Duncan." He specifically alleged a 1971 Chevrolet was in their possession. Among other general requests for relief, he prayed the court to order Roy Duncan and Marcella Duncan to deliver all property of the decedent to him. Count II was directed against Sarah Curtis, the widow. In that count he asked the court to determine title to four certificates of deposit in the name of Sarah Curtis, trustee for E.R. Curtis. Named as defendants in Count III were Sarah Curtis, Marcella Duncan and Elaine Wiggs. In that count he prayed the court to determine title to eleven accounts or certificates of deposit in the names of E.R. Curtis or Sarah Curtis, five certificates of deposit in the names of E.R. Curtis or Elaine Wiggs and one account and six certificates of deposit in the names of E.R. Curtis and Marcella Duncan.

The Probate Division did not specifically designate the judgment of August 16, 1982 to be final for the purpose of appeal. That judgment makes no reference to the dispo-

sition of Counts I and II of the petition. It makes no reference to the adjudication of title to any item of personal property the subject of Count III other than the seven enumerated items in the names of E.R. Curtis or Marcella Duncan. From a docket entry it appears the Probate Division had previously adjudged the widow Sarah Curtis to be the owner of the subject matter of Count II and the items described in Count III in the names of E.R. Curtis or Sarah Curtis.

■ The disposition of this appeal does not require consideration of the fact the judgment of August 16, 1982 did not dispose of items in the name of E.R. Curtis or Elaine Wiggs. Nor is it necessary to consider the unadjudicated counterclaim of Sarah Curtis claiming all or part of the property shown on the inventory of the estate. It is sufficient to observe that Count I against Marcella Duncan and Roy Duncan alleges there is "certain money and other personal property" of the decedent in their possession and prays the court to order delivery of the same to the Personal Representative. The Personal Representative's claim to the subject matter of the judgment of August 16, 1982 cannot be said to be "an entirely separate and independent claim unrelated" to the unadjudicated claim against Marcella Duncan and Roy Duncan set forth in Count I. That judgment is not final for the purpose of appeal.

Even though this appeal must be dismissed, in the interest of judicial economy, the court is compelled to comment upon some of the issues presented by the judgment of August 16, 1982. Perhaps the trial court can give further consideration to these issues under § 472.150.

■ A fundamental issue which has been raised by the appellant is the authority of the Personal Representative to maintain a proceeding to establish the decedent transferred property in fraud of the marital rights of his widow. This issue is brought into focus by the language of § 473.340. That section authorizes a personal representative to seek a determination of title or the right of possession or both to property "which is claimed to be an asset of an estate or which is claimed should be an asset of an estate." § 473.340.1. The applicable portion of the definition of the term estate is "the real and personal property of the decedent." Section 473.340 does not by its terms authorize a personal representative to claim a share for a surviving spouse.

Before the enactment of the 1955 Probate Code, the authority of a spouse to attack a transfer in fraud of marital rights was recognized by decision. Lowe, Transfers in Fraud of Marital Rights, 26 Mo.L.Rev. 1 (1961); *In re Estate of Lowe,* 519 S.W.2d 373 (Mo.App.1975). The following is a general statement of that recognition.

The general rule of law (long in effect in this state) is that a conveyance of property by the husband without consideration and with the intent and purpose to defeat his widow's marital rights in his property, is a fraud upon such widow and she may sue in her own right, and set aside such fraudulent conveyance, and recover the property so fraudulently transferred to the extent of her interest therein. *Merz v. Tower Grove Bank & Trust Co.,* 344 Mo. 1150, 1161, 130 S.W.2d 611, 617 (1939).

It should be noted that some decisions seemed to require that such a transfer be made in contemplation of death. Lowe, Transfers in Fraud of Marital Rights, 26 Mo.L.Rev. 1, supra.

■ *Merz v. Tower Grove Bank & Trust Co.,* supra, has been cited as an exception to that general statement as it pertains to the authority of the personal representative. However, in that case, by the petition, the widow sought to recover one-half of the assets of a trust she alleged was created in fraud of her marital rights. By a cross bill, the executor alleged the trust was void in toto. Finding, among other things, the trust company had not acted in good faith, the Supreme Court set the trust aside in toto and ordered one-half of the trust assets delivered to the widow and the balance to the executor. The general statement was reaffirmed in *Wanstrath v. Kappel,* 356 Mo. 210, 216, 201 S.W.2d 327, 330 (1947), in

which the court, in speaking of a surviving spouse quoted from *Merz v. Tower Grove Bank & Trust Co.,* supra, 344 Mo. at 1161, 130 S.W.2d at 617, "she may sue in her own right, and set aside such fraudulent conveyance, and recover the property so fraudulently transferred, to the extent of her interest therein."

The two limitations contained in the general statement quoted above are generally applicable. "Normally, the evasion litigation is initiated by the surviving spouse. Having renunciation privileges not possessed by the other distributees, it is up to her—not the personal representative—to complain about transfers in derogation of those privileges." Macdonald, Fraud On The Widow's Share, at 264.

> The total defeasance notion misconceives the nature of the widow's claim. She complains that the transfer prevents her from obtaining her statutory share. Although willing to concede that the transfer has 'reality,' she wants her fractional cut. More she cannot use; she is bound by the election statute. To decree total defeasance results in unnecessary loss to the beneficiaries of the inter vivos transfer and a possible gain for the 'laughing heirs.' The effect of total defeasance on the Totten trust is such as to destroy much of its everyday utility as a 'poor man's will.' Macdonald, supra, at 130–131.

Since the adoption of the 1955 Probate Code, it has been held in a proceeding commenced by a widow executrix that a joint bank account was the property of the estate because it was created in fraud of marital rights. *Matter of Estate of LaGarce,* 532 S.W.2d 511 (Mo.App.1975). However, in that case, before his death the decedent had attempted to revoke the joint bank account. On the first appeal the case was remanded for the widow executrix to offer evidence on the issue of fraud, undue influence, etc., relating to the transaction. *In re Estate of LaGarce,* 487 S.W.2d 493 (Mo. banc 1972). By limiting its consideration to a sole issue, the court in *In re Estate of Lowe,* supra, did not consider the question of the authority

of the widow administratrix. In *Nelson v. Nelson,* 512 S.W.2d 455 (Mo.App.1974), the plaintiff was the widow. The lack of authority of the personal representative was recognized in a recent case in which the court said: "We assume petitioner processed this cause of action as the surviving spouse of decedent rather than as his administratrix, because it is questionable whether as administratrix she has standing to set aside a fraudulent transfer by decedent." *Matter of Estate of Mitchell,* 610 S.W.2d 681, 684 (Mo.App.1980).

The authority of a surviving spouse to maintain such a proceeding and the extent of the relief to be granted have been confirmed by the language of the statute.

> Any gift made by a person ... in fraud of the marital rights of his surviving spouse to share in his estate, shall, *at the election of the surviving spouse,* be treated as a testamentary disposition and may be recovered from the donee and persons taking from him without adequate consideration and *applied to the payment of the spouse's share,* as in case of his election to take against the will. § 474.150. (Emphasis added).

The expressed rule has also been confirmed by implication by the enactment of the statute specifically authorizing the personal representative to recover assets transferred in fraud of creditors to the extent necessary to pay creditors. § 473.267. Compare *Ridenour v. Duncan,* 291 S.W.2d 900 (Mo. 1956). No comparable statute was enacted with respect to gifts in fraud of marital rights. See *Nelson v. Nelson,* supra.

■ The language concerning an election in § 474.150 appears to create a misconception. The use of the word election in that section refers to the right to question a gift as being in fraud of the marital interests. It does not give a surviving spouse the power to automatically declare gifts made by a decedent to be in fraud of marital rights. The statutory phrase "in fraud of the marital rights" contained in § 474.150 has been held to adopt the meaning of that phrase as it existed at common law. *Nelson v. Nelson,* supra. The factors which may be

considered in determining the issue of fraud have been outlined in *Nelson v. Nelson,* supra. Also see *In re Estate of Lowe,* supra.

Section 474.150 in part provides a transfer in fraud of marital rights "shall, at the election of the surviving spouse, be treated as a testamentary disposition." It further provides the assets so transferred shall be "applied to the payment of the spouse's share as in case of his election to take against the will." Section 474.160 defines the share that a surviving spouse shall receive upon an election to take against the will. That share is to be determined as set forth in § 474.163, which to some extent adopts the concept of an "augmented estate." Had the decedent devised $59,000 to Marcella Duncan and the surviving spouse elected to take against the will, the share the spouse would have received would have been calculated upon the basis of § 474.163. In view of the emphasized language above, if in some proceedings it is established the joint accounts were created in fraud of the marital rights, the trial court shall consider whether or not the share of the surviving spouse in those accounts should be determined as set forth in § 474.163. Compare the trial court judgment in *Haushalter v. Crawford,* 496 S.W.2d 818 (Mo.1973), and the analysis in *Nelson v. Nelson,* supra.

APPEAL DISMISSED.

All concur.

PREWITT, J., recused.