In the Estate of: Catherine T. **BERNSKOETTER, Deceased.**

Hubert B. **BERNSKOETTER, Personal Representative, Appellant,**

v.

Charlene **KIXMILLER, Respondent.**

No. WD 35837.

Missouri Court of Appeals, Western District.

May 21, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 2, 1985.

Application to Transfer Denied Aug. 7, 1985.

Dale C. Doerhoff, Cook, Vetter & Doerhoff, Jefferson City, for appellant.

Michael P. Riley, Carson, Monaco, Coil, Riley and McMillin, P.C., Jefferson City, for respondent.

Before SOMERVILLE, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This case presents a question of first impression: whether laches or acquiescence is an affirmative defense to a transfer of money in fraud of marital rights. The wife, Catherine T. Bernskoetter, who died intestate, and her husband had been married for 49 years and had 5 children. For approximately the last 20 years of the marriage, the wife had been working outside the home but never put her paycheck into the joint account maintained by her and husband. Instead she had opened a separate account in joint name with the respondent daughter, Charlene Kixmiller.[1] For the last 15 years of her life she worked for the state. She never told the husband she was putting that money in accounts in such a way that he would not get any of it. His testimony was that he had known for 20 years of a savings account with his wife's and Charlene's name on it, and that the money she was earning was going into "savings". Upon the wife's death, the husband discovered that a checking account for $819.16, a savings account for $25,536.41 and a certificate of deposit for $40,000 had all been turned over to the daughter. He also discovered $1100 in cash stuck in a mattress, along with their joint tax returns which showed interest income generated by the money in question. The husband said he had signed the returns at his wife's request, but had not read the returns prior to her demise. The 1980 return showed only the wife's income of about $8,000 and interest income of $4,000.

The husband had little or no income in 1978 and 1979. Mr. Bernskoetter brought this action to discover assets claiming these accounts were transferred in fraud of marital rights. The trial court ruled that the checking account was property of the estate, but that the other $65,000 plus was property of the daughter. Only the certificate and savings account are at issue in this court-tried case.

■ Before proceeding to the merits of the case, there is a procedural matter to address. This action was brought by Hubert Bernskoetter in his capacity as personal representative of the estate, rather than as a surviving spouse. In *Matter of Estate of Curtis*, 663 S.W.2d 420, 425 (Mo.App. 1983), the court said it was recognized that a personal representative lacks the authority to bring an action for fraud of marital rights. However, that court was citing *Matter of Estate of Mitchell*, 610 S.W.2d 681, 684 (Mo.App.1980), where the court got around the procedural problem by *assuming* the petitioner processed the cause of action as the surviving spouse. The cause of action in *Mitchell* was brought in the name of the personal representative and in the name of the spouse. For the sake of judicial economy this court will not base its decision on this procedural error, but will decide the case on the merits. *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193 (Mo. banc 1972). It is up to the surviving spouse to sue on fraud of transfers in derogation of marital rights. *Curtis, supra*, at 425. By allowing a review on the merits in this case, the court is not condoning future suits of this nature which are not brought in the name of the defrauded spouse.

■ Missouri has codified the common law action of fraud of marital rights at § 474.150 RSMo. (1978), which pertinent to this case provides:

1. Any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of his surviving spouse

---

1. The original account also included her son, Richard, but his name was later dropped. The husband knew of this account, but did not know Richard's name was removed.

to share in his estate, shall, at the election of the surviving spouse, be treated as a testamentary disposition and may be recovered from the donee and persons taking from him without adequate consideration and applied to the payment of the spouse's share, as in case of his election to take against the will.

To determine if fraud occurred, the court looks to the *intent* of the transferring spouse. *Matter of Estate of LaGarce*, 532 S.W.2d 511, 517 (Mo.App.1975). This court set out in *Nelson v. Nelson*, 512 S.W.2d 455, 459–461 (Mo.App.1974), four factors which courts uniformly consider indicative of a fraudulent intent. They are: 1) lack of consideration for transfer, 2) retention of control by transferor-spouse over the asset in question, 3) the disproportionate amount of the transfer when compared to the transferor-spouse's total estate, and 4) lack .of open and frank disclosures of the transfer. Not applicable in this case is the factor of the transfers being made in contemplation of death. *Nelson, supra,* at 463.

■ In this case the respondent daughter put on no evidence. The husband's evidence indicated that the wife's pattern of practice over twenty years was to cash her monthly paychecks and deposit the money in the account. The wife's monthly pay from the state was $216 per month in 1966 and was $778 monthly at her death. The very language of the statute in decrying "gifts" makes the element of lack of consideration highly material. *Reinheimer v. Rhedans*, 327 S.W.2d 823 (Mo.1959). In the last few years the daughter was actually going to the bank to make the deposits, but there was no evidence to suggest the daughter contributed any of the cash to the account. Thus the first element of fraud is present. *Nelson, supra,* at 459.

■ There is no doubt the second and third elements are also present. The wife was not giving an outright gift to her daughter. Instead she retained lifetime control and benefits by establishing a joint account. Missouri cases have held this kind of transfer into joint names is quasi-

testamentary and is only "illusory." *Cline v. Graves*, 641 S.W.2d 151, 154–55 (Mo.App. 1982); *Nelson v. Nelson*, 512 S.W.2d at 459. Transfers recoverable under § 474.-150.1 are not thwarted by the placing of them in joint bank accounts. *In re Estate of Lowe*, 519 S.W.2d 373, 377 (Mo.App. 1975). Neither is there dispute that the amount the daughter received was vastly disproportionate to the whole estate.

Though perhaps a closer case, there is also evidence to support a finding of the fourth factor. Although there was no secrecy about the wife's actual *earnings*, the wife obviously intended to keep the amount, location and ownership of *savings* secret. She had the bank statements sent to the daughter's house and requested the bank not to give out any information regarding the account. The funds at issue had been moved to three different institutions since the first account had been opened. The first three accounts were in Jefferson City where the Bernskoetter's lived; the last was in a nearby town where Charlene lived. As this court stated in *Nelson, supra,* at 461, "[i]f this course of conduct over a period of ... years does not rise to the level of an effective campaign of concealment, it at least qualifies as a lack of candor in violation of marital duty."

The trial court found the account had been built up over a period of 20 years by a series of small deposits made either by the wife or daughter, but not one of the deposits was particularly significant as being a major portion of the wife's estate. Although the trier of fact was given less than rock solid evidence as to the source of all the monthly deposits for 20 years, it is apparent they came from the wife's earnings. There was no evidence the money came from Charlene and the earnings never made it into the husband and wife's joint checking account. In essence the trial court found the husband failed in his burden under the common law and now by statute to prove both lack of consideration and intent to defeat his marital rights. *Nelson, supra,* at 459.

Reduced to the lowest denominator, the question is whether an affirmative defense is available as against the spouse seeking to recover personal property, or alternatively the fourth element of secrecy or lack of candor in the transfer can be defensed by evidence of that spouse's knowledge and corresponding lack of action.

Authority exists for the holding that Missouri follows the "intent to defraud" test, as opposed to "retention of ownership" in the area of attacks on transfer of property by a spouse. *Johnson v. La Grange State Bank*, 73 Ill.2d 342, 22 Ill.Dec. 709, 383 N.E.2d 185, 191–92 (1978). This consolidated appeal involved an inter vivos trust and the use of transfers to a joint account. The Illinois Supreme Court states the majority rule is the retention of ownership test, *i.e.*, whether the decedent retained so much control over the property that he parted with control only upon death. *Id.*, 383 N.E.2d at 191. Missouri's reliance upon the intent of the donor as determinative of whether the property can be drawn back into the estate, is the minority view. *Id.*, 383 N.E.2d at 192. If this assessment of the action is correct an Illinois spouse can intend to defraud a spouse but if the method of transfers is not so structured as to retain that person's control, the transfer will not be set aside; while in Missouri the *intent* is the most important element, and once the surviving spouse can show the elements in *Nelson, supra*, it is presumed the deceased spouse had such an intent, and the matter is decided on the presumption deemed conclusive.

Despite the categorization in *Johnson, supra*, the elements of retention of control is but one of four necessary elements in Missouri to successfully attack a transfer. Credence to *Johnson* is given by *Edgar v. Fitzpatrick*, 369 S.W.2d 592 (Mo.App.1963), modified on other grounds, 377 S.W.2d 314 (Mo. banc 1964), which involved a revocable living trust. Though the case ultimately was decided upon other grounds, both courts in their opinions say the fraud on marital rights aspect must be determined on the "test of motive and purpose," 369 at 601–02, 377 at 316. The southern district

held also, even if fraudulent intent were shown, the amount of property involved was not disproportionate.

It seems unfair to say once the four elements of *Nelson* are shown the intent of fraud is conclusive and cannot be countered. An express written assent to the creation of an inter vivos trust or transfer to a spouse and another in joint form should satisfy the requirements of § 474.-150. Eckhardt, Perpetuities Reform by Legislation, 38 Mo.L.Rev. 56, 57 n. 15 (1966).

■ As stated in *Le Garce, supra*, at 517, although the fraud lies in the intent of the spouse putting assets into joint ownership with others, it is appropriate to review the effects on the reasonable expectations of the plaintiff. The defendant should be allowed to offer an affirmative defense (it is doubtful whether Charlene timely did so here) or to attack the element of secrecy by showing actual or constructive acquiescence. An example of a successful defense is found in the old case of *Pollman v. Schaper*, 258 Mo. 710, 167 S.W. 953 (1914), where a widow tried to set aside certain conveyances of land and personal property. The court pointed out the ample evidence that the wife knew she was signing instruments which would vest ownership of the land in her four sons, and that she was cognizant of the gifts of money made to the children, and in fact was pleased.

■ Fraud of marital rights is, however, different than an action of fraud between two parties dealing at arm's length. In an ordinary fraud case laches is not excused by simply saying "I did not know." As the Missouri Supreme Court said in *Russell v. Russell*, 427 S.W.2d 471, 478 (Mo.1968), "[i]f by diligence a fact can be ascertained the want of knowledge so caused is no excuse for a stale claim. The test is not what the plaintiff knows 'but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him.' " A confidential relationship changes the rules of ordinary fraud. *Whittlesey v. Spence*,

439 S.W.2d 195, 199 (Mo.App.1969). Thus the relationship between husband and wife does allow for less inquiry on the part of the defrauded spouse. This court in *Nelson* spoke of the "candor which should obtain between *husband and wife*," and a "lack of candor in violation of *marital duty*." 512 S.W.2d at 460–61 (emphasis added). In *Anderson v. Anderson*, 583 S.W.2d 504 (Ky.App.1979), a husband had transferred three fourths his personal estate into joint accounts with his children. Despite evidence the surviving wife was aware of the transfers, the court affirmed a judgment making the amounts part of his estate. *Id.* at 505.

█ The husband here couldn't have done much of anything to have stopped what was going on. During the marriage he should not have been required to file some type of suit to stop his wife's activities or recover assets already in joint names. He could have only filed for dissolution—and this court will not now fault him for failing to disrupt what was a happy and viable marriage of close to 50 years which stopped only by the wife's sudden and unexpected death. Short of dragging the correct information out of his wife the husband could have assumed this money he wasn't seeing was not being forever excluded from him or from his wife, Catherine's estate. Between a duty to inquire and a duty to disclose, as between spouses, it is better to place the burden on the spouse *making* the transfers to explain and disclose than upon the other spouse. Cf. *Rasch v. Rowland*, 257 S.W.2d 621 (Mo. 1953).

While giving due deference to the trial court the elements to presume fraud on marital rights was established by this spouse. That the case in *Nelson* involved a surviving wife should make no difference. Neither the statute nor the cases make any distinction as to a surviving spouse who may prove this action.

The judgment of the trial court is reversed. Under *Nelson*, the intent of the wife to defraud was established; it was an erroneous application of the law to hold

otherwise. The cause is reversed and remanded to the Probate Court of Cole County for such hearings to determine the share of the husband in the funds in Charlene's name which are here treated as having been transferred to her by testamentary disposition.

SOMERVILLE, Judge, dissenting.

I respectfully dissent. My reasons for doing so are twofold.

*First,* an action for fraud of marital rights must be brought in the name of the surviving spouse, and the personal representative of the deceased spouse's estate, contrary to the majority opinion, lacks standing to bring such an action. Section 474.150, RSMo 1978; and *Matter of Estate of Curtis*, 663 S.W.2d 420, 424–25 (Mo.App. 1983). Section 474.150, supra, clearly says what it means, and if it means what it says, as this writer believes it does, then actions for fraud of marital rights must be brought in the name of the surviving spouse. Tangentially, the last paragraph of the majority opinion purporting to direct the trial court on reversal and remand appears, at least tacitly, to recognize that under § 474.-150, supra, and *Matter of Estate of Curtis*, supra, the personal representative lacked standing to bring the action for fraud of marital rights.

*Second,* the majority opinion, in my view, has substituted its judgment for that of the trial court on the substantive issues in disregard of the scope of appellate review in court tried cases delineated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). According to the majority opinion, "[i]n the last few years the daughter was actually going to the bank to make the deposits, but there was no evidence to suggest the daughter contributed any of the cash to the account." By the same token there was no evidence to suggest the wife was the source of such funds being deposited. The burden was on the appellant to show that the wife was the source of the funds rather than upon the daughter to show that she was the source of the funds. Appellant's failure to carry the burden of proof resting

upon him cannot be obfuscated or ignored on the basis of speculation and conjecture. In sum, assuming, arguendo, that appellant had standing or authority to bring the action, the judgment of the trial court in favor of the daughter should be affirmed under the tenet of *Murphy v. Carron,* supra.