Matter of Revocable Trust of Carl E. Mc-DONALD, Ted B. Evans, Trustee, C. Ross Rhoades, Successor Trustee, Respondent–Appellant,

and

Home of Hope, Inc., Respondent–Appellant,

v.

Betty L. McDONALD, Appellant–Respondent.

Nos. 17047, 17048 and 17070.

Missouri Court of Appeals, Southern District, Division One.

Aug. 2, 1991.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 23, 1991.

Application to Transfer Denied Oct. 16, 1991.

Abe R. Paul, Rhoades, Paul and Paul, Pineville, for respondent-appellant C. Ross Rhoades, Successor Trustee.

Mark Curnutte, Logan, Lowry, Johnston, West, McGeady, Curnutte & Logan, Vinita, Okl., for respondent-appellant Home of Hope, Inc.

Ron Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for appellant-respondent Betty L. McDonald.

MAUS, Presiding Judge.

The parties in the trial court to the attack upon the inter vivos revocable declaration of trust of Carl E. McDonald ("Carl"), now deceased, included the following. C. Ross Rhoades, Successor Trustee (Trustee); Betty Lee McDonald, as Personal Representative of the Estate of Carl E. McDonald, deceased (Personal Representative); Betty Lee McDonald, as widow of Carl E. McDonald, deceased (Betty); and Home of Hope, Inc., as residuary beneficiary of the trust.

The judgment appealed from determined all issues in favor of the Trustee and Home of Hope and included the following specific adjudications.

(1) That the declaration of trust and the first three amendments thereto are valid.

(2) The assets of the trust are not subject to the marital rights of Betty Lee McDonald.

(3) The fourth amendment to the declaration of trust is invalid.

(4) That Betty Lee McDonald account "to the court and the Successor Trustee, within 60 days", and that she receive 10% of the gross receipts of the trust she had collected and $10 per hour for the accounting.

(5) That the trust pay Betty Lee McDonald's attorney the sum of $25,764.86.

(6) That the trust hold Betty Lee McDonald harmless from each of a list of creditors contained in the judgment.

(7) That Betty Lee McDonald's challenge of the validity of the trust and her appeal shall not affect her rights as a beneficiary under the trust.

Betty appeals. She asserts the trial court erred in respect to adjudications (1) and (2). The Trustee and Home of Hope separately appeal. They assert the trial court erred in respect to adjudications (3), (4), (5), (6) and (7). An outline of the procedural history, as well as the evidence, is necessary for the consideration and resolution of the issues raised by these appeals. Additional details will be stated as necessary for consideration of each point.

Carl and Betty were married December 17, 1974. Each had been previously married. Betty had three children by her prior marriage. Carl had no children. His former wife, Grace, had a retarded daughter, Annette Allen. Annette lived in the Home of Hope. Carl provided part of the expense for her care. Carl promised Grace that he would always provide care for Annette.

The day before his marriage to Betty, Carl took her to his lawyer's office. There she was presented with a Prenuptial Agreement. That agreement recited "that his net worth, depending on values of real estate, is approximately Two Hundred Fifty Thousand Dollars ($250,000.00)". It also acknowledged Carl's responsibility to Annette and Betty's obligations to her three children. The agreement provided that upon the death of Carl, if she survived him as his widow, Betty would receive "either the lump sum of Twenty-five Thousand Dollars ($25,000.00) or the monthly income of One Thousand Dollars ($1,000.00) per month for her lifetime as she may elect."

She was also to receive the proceeds of a $25,000.00 life insurance policy. These benefits were declared to be in lieu of any and all other rights which Betty might have as widow in the estate of Carl. Carl also agreed to make the payments due on a note secured by a deed of trust on a home owned by Betty.

By the agreement, each of the parties agreed that the other would hold free from any marital right any and all property, which he or she may own or hereafter own, and each would join and execute as a party any instrument requested by the other spouse for the purpose of transferring property. The parties signed that agreement.

Carl was a real estate broker and developer. He owned several tracts of real property, including the Mickey Mantle Holiday Inn property. A financial statement dated February 26, 1973, given by Carl to a bank, showed his net worth to be $571,657.30. Betty owned a home which was encumbered by a deed of trust. She had worked for a number of years for the Gas Service Company as a bookkeeper. After the marriage, at Carl's insistence, she quit that job and thereafter worked as property manager and bookkeeper for Carl.

Carl was described as "moody". At times he became very depressed. Also at times he drank to excess. However, until 1985, the parties got along well. Carl was hospitalized for severe depression in early 1986. At one time Betty sought to have him determined incompetent. The parties later separated. Carl asked Betty for a divorce. At first she refused. On April 13, 1987, she filed an action for dissolution of the marriage. Before Carl's death, the parties became somewhat reconciled. The dissolution action became inactive. Betty would go to Carl's home to see that he was cared for. She continued to act as his property manager and bookkeeper.

Carl died June 18, 1988. He died intestate. Under the statute of descent and distribution, § 474.010, Betty is his sole heir at law.

On October 16, 1979, Carl took Betty to the office of his lawyer. Carl had caused to be prepared an inter vivos revocable self-declaration of trust and warranty deeds conveying several tracts of real property to the trustee. Carl expressed to others that he had created the revocable trust for tax purposes, to avoid probate, to provide for the management of his estate, to care for Annette, and provide benefits for Betty for her lifetime. He told Betty the trust was for those purposes.

As recited in the judgment of the trial court, the trust provisions for Betty were: "(1) she was to have the use for her lifetime of a residential property owned by Carl prior to his marriage to Betty and located at 3510 South Joplin, Joplin, Missouri; the trust was to pay all taxes, insurance and reasonable costs of maintenance for the property; (2) Betty was to have all furniture and appliances in the residence located at 2002 East 24th Street, Joplin, Missouri; (3) she was to have Carl's diamond ring for her life only; (4) she was to receive $1,000.00 per month for her lifetime and $2,000.00 per year reimbursement for travel and vacation expenses; (5) the trust was to pay for sufficient medical insurance to provide the standard of coverage similar to what Betty had enjoyed during the marriage taking into account benefits provided by governmental agencies; and (6) the trust was to keep in full force a life insurance policy on her life with Equitable Life Assurance Society in the amount of $5,000.00. In the event Betty was unwilling to accept those provisions she was to receive $25,000.00 from Carl's estate as promised under the terms of the prenuptial agreement of December 6, 1974."

Betty read the instrument. She declined to execute the warranty deeds. She said she did so because "I didn't thoroughly understand it and I thought it was kind of limited as to my benefit, and I felt I was entitled to more benefits than what was in there." The parties went home. Betty testified there was a heated discussion and that Carl said there would be a divorce if she didn't sign. The next day, she went to the lawyer's office and executed the deeds.

Carl executed four amendments to the trust indenture. The first was executed on May 15, 1980. The first amendment gave Betty some additional office furniture and equipment and allowed the Trustee to increase the monthly income to Betty ($1,000.00 per month) within his discretion to take into consideration the "present inflationary rate".

The second amendment was executed on November 26, 1983. The second amendment granted Betty a life estate in certain additional tracts of real estate. Betty was to receive the rents and profits from the additional tracts. Betty was made liable or responsible for all taxes, insurance and reasonable costs of maintenance on the additional tracts.

The third amendment was executed on December 23, 1983. The third amendment changed certain legal descriptions but did not otherwise modify or amend the trust indenture.

The fourth amendment was executed on February 12, 1987. The fourth amendment eliminated any interest or benefit that Betty had under the terms of the trust indenture.

Betty had knowledge of the first, second and third amendments at the time they were made. At some time after it was executed, Betty learned of the fourth amendment.

After the creation of the trust, Carl, from time to time, established various trust and individual bank accounts. He indiscriminately intermingled funds from those accounts. He used non-trust funds for the payment of trust indebtedness and purchase of trust property. He used trust funds for individual purposes.

In 1985, Carl transferred from the trust to Betty $80,000.00 in Certificates of Deposit. He later requested that she return the Certificates of Deposit to the trust, but she refused. The assets, and their value, received by Betty during the marriage and as a result of Carl's death, include the following:

| "1. C.D.s | $ 80,000.00 |
| 2. Tyson Stock | 900.00 |
| 3. 2226 North St. Charles property | 33,500.00 |
| 4. Martin note | 20,000.00 |
| 5. 62 Cadillac | 7,400.00 |
| 6. Steers note | 7,100.00 |
| 7. Northwestern Life Insurance | 10,000.00 |
| 8. Prudential Life | 2,000.00 |
| Total | $160,900.00" |

After Carl's death, Betty continued as property manager and bookkeeper. She collected and retained the income from the trust assets.

Ted Evans, the Successor Trustee named in the trust indenture, filed a petition in the Circuit Court of Jasper County praying that he be allowed to resign and that a second Successor Trustee be appointed. On September 1, 1988, Betty filed an Entry of Appearance and concurred in the petition and stated she had no objections to the appointment of the firm of Rhoades, Paul & Paul as Successor Trustee. C. Ross Rhoades was appointed Successor Trustee.

On February 17, 1989, Betty filed, in the pending action, an instrument entitled "Motion for Construction of Terms of Trust".[1] By this motion, Betty moved

> "this Court for an order pursuant to § 456.210 of the Revised Statutes of Missouri construing the terms of the trust and in particular declaring that the trust is void or voidable, that the trust was revoked during Carl McDonald's lifetime by his failure to abide by the terms of the trust, or in the alternative, that the property transferred to the trust was transferred in fraud of Betty McDonald's marital rights entitling her to one-half of all the property in the trust.
>
> WHEREFORE, Betty McDonald prays for an order of this court determining that the trust is void or voidable at her option or in the alternative that Carl McDonald revoked the trust during his lifetime by not complying with its terms, or in the alternative, that any transfer to

the trust was in fraud of marital rights entitling Betty McDonald to ownership of one-half of all of the property transferred to the trust."

The Successor Trustee filed an answer in opposition to that motion.

On February 21, 1989, Betty McDonald, Personal Representative of the Estate of Carl E. McDonald, filed, in the Probate Division of the Circuit Court of Jasper County, an instrument entitled "Petition to Determine Title and Right of Possession." That petition itemized 32 items of property. It further alleged the following:

> "That some or all of said properties have some reference to a trust which the personal representative believes is void or voidable and which the personal representative believes the property was not correctly or properly placed in trust even if the trust is valid and enforceable, which the personal representative specifically denies. Therefore, all of the above listed property was and is part of Carl McDonald's personal estate to be administered by the court rather than be administered under the alleged trust.
>
> That in the event the Court determines the trust was valid, which the personal representative specifically denies, then all transfers to the trust were made in fraud of the personal representative's marital rights and are wholly invalid.
>
> Alternatively, that all transfers to the trust were made in fraud of the personal representative's marital rights and she is entitled to at least one-half of the value of all said items.
>
> Alternatively, that Carl McDonald revoked the trust by failing to comply with the terms of the trust."

The prayer of that petition was:

> "WHEREFORE, your personal representative prays for a determination by this court that the trust is void or voidable and that the property listed above is all in Carl McDonald's name individually

---

**1.** The premises of the motion reads: "Comes now Betty McDonald, personal representative of the estate of Carl McDonald." However, the body of that instrument makes it clear the motion is asserting the claim of a surviving spouse.

The parties and the trial court disregarded the words "personal representative of the estate of Carl McDonald" as used in error. This court will do likewise. Cf. *Stratton v. Stratton,* 694 S.W.2d 510 (Mo.App.1985).

and to be administered by this court through his estate."

Upon motion, these two proceedings were consolidated for trial and disposition. The three separate appeals noted above have been consolidated for consideration and disposition.

Several of the points on appeal are governed, in whole or in part, by common principles of substantive and procedural law. Those principles include the following. An action will lie to set aside a conveyance, including the creation of a joint bank account and a self-declaration of trust, on a number of bases. Those bases include the fact a conveyance is testamentary in character, the incapacity of the grantor, and undue influence or fraud practiced upon the grantor.

■■■ There also exists a distinct cause of action to attack a conveyance that would improperly deny a surviving spouse his or her marital rights. Such a conveyance is, perhaps unfortunately, commonly referred to as a conveyance "in fraud of marital rights". As so used, the term "fraud" bears a meaning distinct from the meaning of that term when used in the conventional sense as the basis for a cause of action. The dual use of the term "fraud" has resulted in doubt concerning the elements of a cause of action attacking a conveyance as being in fraud of marital rights. It has resulted in confusion concerning who may assert such a cause of action. Finally, it has resulted in conflict concerning the extent of the relief to be granted as a part of such a cause of action.

The right to attack a conveyance in fraud of marital rights existed at common law. *Matter of Estate of Froman*, 803 S.W.2d 176 (Mo.App.1991). "Missouri has codified the common law action of fraud of marital rights. RSMo § 474.150 (1978)." *In re Estate of Brown*, 800 S.W.2d 137, 138 (Mo. App.1990). The relevant portions of that section provide:

"1. Any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of his surviving spouse to share in his estate, shall, at the election of the surviving spouse, be treated as a testamentary disposition and may be recovered from the donee and persons taking from him without adequate consideration and applied to the payment of the spouse's share, as in case of his election to take against the will.

2. Any conveyance of real estate made by a married person at any time without the joinder or other written express assent of his spouse, made at any time, duly acknowledged, is deemed to be in fraud of the marital rights of his spouse, if the spouse becomes a surviving spouse, unless the contrary is shown." § 474.150.

"[T]he phrase 'in fraud of the marital rights' contained in the statute, 'was intended to adopt the meaning of that term as it existed at common law.'" *In re Estate of Lowe*, 519 S.W.2d 373, 376 (Mo.App. 1975).

The test adopted in this State for determining if a conveyance is in fraud of marital rights, has been succinctly stated.

"The fraud of which this court spoke in the Merz case (and in the cases therein cited) was not legal fraud in the sense of fraud to be decisively demonstrated in all cases by the mere fact that a conveyance is a transfer of the husband's personalty in his lifetime and consequently the wife had no marital rights in such personalty which, but for the conveyance in his lifetime, would have belonged to him 'at the time of his' death. Section 469.070, RSMo 1949, V.A.M.S. The careful reading of the Merz case, and the cases therein cited, discloses that the voluntary conveyance which the widow may set aside as fraudulent is one executed with the *intent and purpose* to defeat his wife's marital rights. See also, *Wanstrath v. Kappel*, 356 Mo. 210, 201 S.W.2d 327 [ (App.1947) ]; and *Wahl v. Wahl*, 357 Mo. 89, 206 S.W.2d 334 [(1947) ]. Consequently in the instant case, as in the Merz case, in treating with plaintiff-appellant's contention of fraud, we are concerned only with the husband-grantor's intent. And in determining his intent we may consider and weigh all of the facts and circumstances in evidence." *Potter*

v. *Winter*, 280 S.W.2d 27, 35–36 (Mo. 1955). (Emphasis in original).

"As used in the statute, the term 'in fraud of marital rights' takes its common law definition, and is to be determined by the facts and circumstances that existed *at the time of the transfer*." Hanna & Borron, 5A Mo.Prac., Probate Law and Practice § 1193 (2d ed. 1988). (Emphasis added.)

Also see *Matter of Estate of Froman*, supra.

Facts and circumstances commonly recognized as evidence of such an intent have been categorized. See Hanna & Borron, 5A Mo.Prac., Probate Law and Practice § 1193 (2d ed. 1988).

"Under the common law, the burden of proving the prohibited intent and purpose to defraud was upon the surviving spouse. *Dillard v. Dillard*, 266 S.W.2d 561, 563 (Mo.1954); *Sebree v. Rosen*, 349 S.W.2d 865, 872 (Mo.1961). Although the present statute changes this burden of proof with respect to transfers of realty, the classical rule on burden of proof remains unaffected respecting personalty." *Nelson v. Nelson*, 512 S.W.2d 455, 459 (Mo.App.1974).

The cause of action to attack a conveyance as being in fraud of marital rights is vested in and must be asserted by a surviving spouse. *Estate of Bernskoetter*, 693 S.W.2d 249 (Mo.App.1985); *Matter of Estate of Curtis*, 663 S.W.2d 420 (Mo.App. 1983); *Merz v. Tower Grove Bank & Trust Co.*, 344 Mo. 1150, 130 S.W.2d 611 (1939). The extent of the relief to be afforded by such a cause of action has also been summarily stated.

"Merely because the trust is void as to the widow's rights does not necessarily make it void as to the rights of other beneficiaries. We considered this same trust in a preliminary phase in *Wanstrath v. Kappel*, 354 Mo. 565, 190 S.W.2d 241, 242. We observed there: 'On proof of such allegations the trust could be set aside as to the widow and left in full force as to all others.' And in *Straat v. O'Neil*, 84 Mo. 68, this court, discussing cases of this kind, said that

the relief granted by courts of equity in such cases has been to set aside the fraudulent conveyance in so far as it affects the rights of the widow." *Wanstrath v. Kappel*, 356 Mo. 210, 201 S.W.2d 327, 331 (1947).

Also see *Nelson v. Nelson*, supra; *Matter of Estate of Curtis*, supra. The result of a successful attack upon a conveyance in fraud of marital rights has been stated in the following terms. "The surviving spouse gets his or her elective share out of the fraudulently transferred property and the balance remaining will belong to the original transferee." Hanna & Borron, 5A Mo.Prac., Probate Law and Practice § 1193 (2d ed. 1988). In *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318 (Mo banc. 1964), sometimes cited to the contrary, the court found an attempt to create a trust failed because the trust specified no specific property and as a result "no trust was created".

 The judgment from which the consolidated appeals have been taken was rendered in response to the "Motion for Construction" of Betty and the "Petition to Determine Title" of the Personal Representative. The issue of whether or not the warranty deeds to the Trustee were in fraud of marital rights could be raised only by Betty as surviving spouse. *Potter v. Winter*, supra; *Merz v. Tower Grove Bank & Trust Co.*, supra; *Matter of Estate of Curtis*, supra.

By her motion, Betty invoked § 456.210 and prayed that the court construe the terms of the trust and declare it void or voidable or, in the alternative, that any transfer to the trust was in fraud of her marital rights.

That section provides:

"When the circuit court of any county has acquired jurisdiction over the trustee and beneficiaries of a trust incident to a proceeding for removal or appointment of a trustee, instructions to a trustee, accounting to a trustee, reimbursement, exoneration or surcharge of a trustee, or construction of the terms of the trust, it may, in its decree granting or denying relief in such proceeding, retain jurisdiction for the purpose of entertaining later

proceedings of any of such types with reference to the trust so that no more notice need be given of such later proceedings than that required for hearings on motions during the pendency of a suit." § 456.210.

Betty's motion, even when considered as a pleading asking for construction of the declaration of trust, did not vest the trial court with carte blanche authority to decide any and all issues pertaining to the trust. A petition seeking the construction of an instrument should set forth the provisions of the instrument alleged to be uncertain, together with any extraneous facts creating ambiguity, and contain a statement of the construction sought by the plaintiff. *Riggs v. Moise*, 344 Mo. 177, 128 S.W.2d 632 (1939). A responsive pleading should in similar fashion set forth the defendant's construction of the instrument. In a proceeding to construe an instrument, the issues before the court are those raised by such pleadings. Hanna & Borron, 5 Mo. Prac., Probate Law and Practice, § 400 (2d ed. 1988). The authority of the court is limited to those issues.

> " 'There is no question, of course, as to such inherent jurisdiction of a court of equity, but it has been ruled in this State that although the court has such abstract jurisdiction inherently, it can acquire jurisdiction in the concrete in a particular instance only when it is presented to the court as prescribed by law. We quote again with approval the general rule, subject to such exception as may be provided by statute: " 'The judicial power can be set in motion in civil matters only by some person—using the word in its broadest sense—in a case against another person. The courts cannot, ex mero motu, set themselves in motion, *nor have they power to decide questions except such as are presented by the parties in their pleadings*. The parties, by their attorneys, make the record, and *what is decided within the issue is res judicata;*

> *anything beyond is coram non judice and void.*' Andrews' Stephen's Pleading (2d Ed.) p. 34." *State ex rel. McManus v. Muench*, 217 Mo. 124, 117 S.W. 25, 29, 129 Am.St.Rep. 536 [ (1909) ].' *Riggs v. Moise*, 344 Mo. 177, 128 S.W.2d 632, 634, 635; see also *Taylor v. Hughes*, 363 Mo. 389, 251 S.W.2d 94, 102 [ (1952) ]." *State ex rel. Jenkins v. Bradley*, 358 S.W.2d 38, 40 (Mo.1962). (Emphasis added.)

That principle has been more briefly stated. "Jurisdiction to decide concrete issues in a particular case is limited to those presented by the parties in their pleadings, and anything beyond is coram non judice and void." *State ex rel. Houser v. Goodman*, 406 S.W.2d 121, 126 (Mo.App.1966). (Footnote omitted.)

This underlying principle is not modified by § 456.210 to expand the issues before the court beyond the issues raised by a motion and response thereto. Overstreet, "Appointment of Successor Trustees, Trust Administration and Settlements in Missouri", 13 Mo.L.Rev. 255 (1948). It must also be noted that § 456.210 contemplates the creation and continued existence of a trust.[2] The allegation that the trust had been revoked by Carl McDonald's lifetime failure to abide by the terms of the trust, does not fall within the purview of § 456.-210. The Personal Representative also sought to declare the trust void on that basis. The Personal Representative has not appealed.

The principle concerning the issues before a court is, of course, subject to the rule that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings...." Rule 55.33(b). However,

> "[b]efore evidence admitted without objection will give rise to amendment of the pleadings by implied consent under Rule

**2.** Betty's motion is entitled "Motion for Construction of Terms of Trust" and invokes § 456.-210. An action to construe a trust is not a *proper vehicle by which to establish a convey-ance to a trust is invalid or is in fraud of marital rights.* However, the motion also prays the

court to declare "that the property transferred to the trust was transferred in fraud of Betty McDonald's marital rights". The parties and the trial court treated the motion as a petition for a declaratory judgment seeking that relief. Again, this court will do likewise.

55.33(b) such evidence must bear only on that issue and not be relevant to an issue already in the case. *Smith v. Heisserer*, 609 S.W.2d 485, 486 (Mo.App.1980); *Gee v. Gee*, 605 S.W.2d 815 (Mo.App.1980)." *Brazell v. St. Louis Southwestern Ry. Co.*, 632 S.W.2d 277, 281 (Mo.App.1982).

■ Betty's first point is "the trial court erred in holding that Carl's property acquired before the marriage was not subject to Betty's marital rights". Unfortunately, the findings of the trial court included a statement that Betty "had no marital rights to the property being transferred into the trust since it was Carl's separate pre-marital property". That statement would confine the marital rights of a surviving spouse to property that would have been marital property upon a dissolution of a marriage. However the two interests may be interrelated, this statement of the trial court is erroneous.

The extent of the two interests is defined by different statutes. "Marital property" is defined by § 452.330. The authority of a court over that property upon the dissolution of a marriage is also defined by the same section. The right of a surviving spouse to elect to take against a will is established by § 474.160. The extent of the interest of a surviving spouse upon electing to take against the will of a decedent is defined by §§ 474.160 and 474.163, which are incorporated in § 474.150. The property referred to in § 474.150 is a property interest that can be conveyed by the spouse, but is not limited to property that would be marital property upon dissolution.

However, the erroneous statement of the trial court does not establish that the judgment of the trial court holding that Betty has no marital interests in the assets of the trust is erroneous. The trial court also found "Carl did not intend to defraud Betty of her marital rights when he established the trust nor when various transfers to or for the benefit of the Trust were made." That finding is supported by the evidence and, as hereafter developed, establishes that the conveyances to the trust were not in fraud of Betty's marital rights within

the meaning of § 474.150. Betty's first point has no merit.

■ Betty's second point is "the trial court erred in holding that Betty McDonald had the burden of proving the invalidity of the agreements which eliminated her marital rights". She cites § 474.220, which governs the validity of a waiver of the right to elect to take against the will. She relies upon *Estate of Murphy*, 661 S.W.2d 657 (Mo.App.1983). That case holds that one relying upon such an agreement has the burden of proof to establish its validity. That holding has been questioned. *State ex rel. Rope v. Borron*, 762 S.W.2d 427 (Mo.App.1988).

Section 474.220 and *Estate of Murphy* do not aid Betty. In this case, the issue is not if Betty has a right to elect to take against a will. The issue is whether or not the conveyances to the trust were in fraud of Betty's marital rights as fraud is defined in § 474.150. An unbroken line of cases establish that Betty had the burden of proof on that issue. *Nelson v. Nelson*, supra. Betty's second point is denied.

■ Her third and fourth points are interrelated. By those points she contends the evidence established the conveyances to the trust were in fraud of her marital rights. She first argues this is true because Carl retained the right to revoke and amend the trust indenture and control trust assets. Therefore, she says, the transfer was "illusory" and did not defeat her marital rights. This doctrine is followed in some jurisdictions. Annot., "Validity of Inter Vivos Trust Established by one Spouse Which Impairs the Other Spouse's Distributive Share or Other Statutory Rights in Property", 39 A.L.R.3d 14 (1971). However, that doctrine has been rejected in Missouri. 4 Bogert, The Law of Trusts and Trustees, § 211 (Rev. 2d ed. 1979). In this state, a conveyance in fraud of marital rights

"... which the widow may set aside as fraudulent is one executed with the *intent and purpose* to defeat his wife's marital rights. See also, *Wanstrath v. Kappel*, 356 Mo. 210, 201 S.W.2d 327; and *Wahl v. Wahl*, 357 Mo. 89, 206

S.W.2d 334. Consequently in the instant case, as in the Merz case, in treating with plaintiff-appellant's contention of fraud, we are concerned only with the husband-grantor's intent. And in determining his intent we may consider and weigh all of the facts and circumstances in evidence." *Potter v. Winter,* 280 S.W.2d at 35–36. (Emphasis in original.)

Also see *Matter of Estate of Froman,* supra.

■ Betty next argues that the facts and circumstances establish that Carl had such intent and purpose. She cites the following facts which are probative of such an intent. There was no consideration for the conveyances. Carl retained control of the terms of the trust indenture and the trust assets. The conveyances conveyed a substantial portion of Carl's property.

Betty also heavily relies upon *Shannon v. Shannon,* 680 S.W.2d 367 (Mo.App. 1984). *Shannon* is neither factually nor legally applicable. The basic legal difference is that *Shannon* was an action to obtain a lawful distribution of marital property upon the dissolution of a marriage. The basic factual difference is that there was evidence to support the finding of the trial court that Shannon did intend to deprive his wife of any interest in the property and attempted to do so by an elaborate course of fraud, using the term in its conventional sense. That fraudulent intent was established by abundant evidence. The ultimate example was the fact the husband surreptitiously obtained a decree dissolving the marriage, but continued to live with his wife for many months until she accidentally learned of the dissolution.

To support their argument that Carl did not have an intent and purpose to defraud Betty, the Trustee and Home of Hope rely upon the following facts recognized as evidence that he did not have such an intent. Carl had legitimate reasons for creating the trust. He was not contemplating death at the time it was created. Betty knew the provisions of the trust and joined in the conveyances to the trust. The trust indenture provided substantial benefits for Betty.

As stated, the trial court found that it was not Carl's intent and purpose to deprive Betty of her marital rights in his estate. That finding is supported by the evidence. Cf. *Weber v. Knackstedt,* 707 S.W.2d 800 (Mo.App.1986). Betty's third point and fourth points are denied.

■ Her fifth point is that the trust was invalid because Carl commingled separate and marital with trust property. This point acknowledges that the conveyances did in fact convey legal title to the real estate to the Trustee and a trust was in fact funded. That being so, the fact additional property was added to the trust, or trust assets were used as Carl directed, as he was authorized to do by the trust, does not invalidate the trust. Betty's fifth point has no merit.

■ Betty's sixth point is that the trial court erred in holding that her challenge of the trust is barred by the statute of limitations. As heretofore stated, her challenge of the trust is ineffective because of the failure of her proof. That being so, the sixth point is moot.

■ Betty's last point is that the trial court erred in not awarding her $723,-589.07. Betty first sought such relief in a motion filed after the trial court entered an initial judgment against her. That initial judgment is not before this Court. The consolidated proceeding was heard upon the Motion of Betty and the Petition of the Personal Representative. By neither of those pleadings did Betty or the Personal Representative seek the relief she claims by her seventh point. The trial court did not err in denying her new claim first asserted in a post-judgment motion. The point is denied.

■ The first point of the Trustee and Home of Hope is that the trial court erred by declaring the fourth amendment to the trust indenture to be invalid. The fourth amendment was executed February 12, 1987 and terminated all interests of Betty in the trust. The Trustee and Home of Hope support that point by the following argument. The fact Carl reserved the right to revoke and amend the trust inden-

ture and control the trust assets as trustee did not invalidate the trust, citing *Webb v. St. Louis County National Bank*, 551 S.W.2d 869 (Mo.App.1977). Betty did not plead or prove that Carl was mentally incompetent when he executed the fourth amendment. The fourth amendment was not a conveyance of property within the meaning of § 474.150. Therefore, the fourth amendment is not invalid.

The trial court did not assign any basis for its judgment that the fourth amendment was invalid. "Nevertheless, this court must affirm the trial court's judgment if it is correct under any reasonable theory." *Jensen v. Borton*, 734 S.W.2d 580, 584 (Mo.App.1987).

The history of Carl's revocable declaration of trust presents unique circumstances. That declaration did reserve to him the power to amend or revoke the trust indenture. It did provide substantial benefits for Betty. She knew of its provisions before she joined in the conveyances that funded the trust. She did so with reluctance.

The provisions of the trust indenture for the benefit of Betty are of vital importance from both a factual and legal standpoint. Factually, it is obvious Betty acted in reliance upon the provisions for her benefit. The trust would not have been funded without those provisions. "Where the acts of a person induced another to refrain from acting in a particular manner, he is estopped from taking any position inconsistent with his inducement which led to the prejudice of the other person." *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 521 (Mo.App.1985). Legally, the presence of those provisions in the trust indenture is part of the compelling evidence that it was not Carl's purpose and intent to deprive Betty of her marital rights by funding the trust.

As stated, this state does not recognize that a trust is invalid, as against the marital rights of a surviving spouse, because it is "illusory" as a result of the retention of control by a settlor. Nevertheless, it is not equitable to permit the settlor to change his intent and revoke the provisions of the

trust indenture upon the basis of which the trust was funded and provisions which are relied upon to establish that funding the trust was not in fraud of Betty's marital rights. Carl was estopped from revoking the provisions for Betty, and the fourth amendment is invalid. Cf. *Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394 (Mo.App.1984).

■ Three of the remaining four points of the Trustee and Home of Hope have a common bond. The first of those points is that the trial court erred in its order that the Trustee pay Betty 10% of the trust receipts she had collected and $10.00 per hour for services in rendering an accounting. Another is that the trial court erred in holding that Betty's attack on the validity of the trust shall not, by reason of the terms of the trust, affect her rights as a beneficiary thereunder, and any language in the trust indenture to the contrary is unenforceable. The last of those points is that the trial court erred in ordering the Trustee to hold Betty harmless from the claims of creditors listed in the judgment.

The common bond of those points is that the orders complained of deal with issues not raised by the Motion of Betty or the Petition of the Personal Representative, or in the responsive pleadings thereto. Issues cannot be properly raised in post-judgment motions or by the dialogue of court and counsel. The issues purportedly decided by the three points mentioned were not before the court. The court erred in entering the orders referred to in those three points.

■ The final point of the Trustee and Home of Hope is that the trial court erred in ordering the Trustee to pay Betty's attorneys fees. "Clearly a beneficiary who asserts the invalidity of the trust is not entitled to attorney's fees." Hanna & Borron, 5 Mo.Prac., Probate Law and Practice § 403 (2d ed. 1988). Betty's Motion and the Petition of the Personal Representative did, indeed, attack the validity of the trust.

She seems to acknowledge this but seeks to support the award of such fees by the

following recital in her post-judgment motion.

" 'A couple of weeks before the trial of this matter, the trustee filed a motion for approval of attorney's fees asking that the Court enter an order making Betty responsible for the trustee's attorney fees in the event the trust was found to be invalid. Betty filed a response pointing out that the trustee was contacted by and acted on behalf of the Home of Hope, a contingent beneficiary. But, also praying as follows:

"Further ... in the alternative, if the trust is found to be valid, that in addition to the fees of the trustee and attorney, that the trust be responsible for all fees incurred by Betty McDonald excluding but not limited to attorney fees, litigation expense and costs."

'The parties appeared for hearing on the motions in Neosho on February 7, 1990 but at that time the Court expressed the opinion that the attorney fees should be paid and if the trust was invalid, the fees could be paid from the estate. The parties then agreed and the Court found that if the trust was held invalid, the trustee and the trustee's attorney fees would be paid from the probate estate and if the trust was declared to be valid, Betty McDonald's attorney fees would be paid by the trust. Such an agreement was and is fair because throughout the last two years much of the attorney's fees have dealt directly with handling what the Court has now found is trust property. In any event, the issue was conclusively decided by the Court on February 7, 1990.' "

This Court need not consider the propriety of an agreement that the fees of attorneys for both a party attacking a trust and a trustee defending a trust will be paid from the assets of the trust, irrespective of the outcome of the litigation. The contention of the Trustee negates the existence of such an agreement. The record before this Court does not contain such an agreement. Nor does it include any order or judgment of the trial court of February 7, 1990. The recital in the post-judgment motion, repeated in the brief, does not establish any fact. There is nothing in the record before this Court to support the award of attorney's fees for Betty and, therefore, that portion of the judgment of the trial court must be reversed.

The judgment of the trial court finding the trust indenture and first three amendments thereto and the conveyances to the trust valid is affirmed. The judgment of the trial court that the fourth amendment to the trust indenture is invalid is affirmed. The judgment of the trial court that the assets of the trust are not subject to the marital rights of Betty L. McDonald is affirmed. The remaining judgments of the trial court are reversed. Betty L. McDonald has prevailed in establishing the fourth amendment to the trust indenture is invalid. The costs are assessed against the Successor Trustee.

PREWITT and CROW, JJ., concur.