Beulah M. COATES and Gordon R. Coates, Trustees under the Will of William Waldren Coates, Deceased, Plaintiffs-Appellants —Plaintiffs-Respondents,

v.

Beulah M. COATES, Gordon R. Coates, Neligh C. Coates, and W. W. Coates, Jr., Defendants-Respondents—Defendants-Appellants.

Nos. 22778, 22786.

Kansas City Court of Appeals. Missouri.

Oct. 6, 1958.

Clay C. Rogers (Rogers, Field, Gentry & Jackson) Kansas City, for plaintiffs-appellants.

Lawrence R. Brown (Stinson, Mag, Thomson, McEvers & Fizzell) Kansas City, for defendants-respondents.

HUNTER, Judge.

Presented for our review are the consolidated appeals of Beulah M. Coates and Gordon R. Coates, who we refer to hereinafter as plaintiffs, co-trustees under the will of William Waldren Coates, deceased; and Beulah M. and Neligh C. Coates and W. W. Coates, Jr., which latter two parties we refer to hereinafter as defendants, beneficiaries of the trust created by that will.

Plaintiff, Beulah Coates, is the widow of William Waldren Coates, and is the life beneficiary of the trust as well as co-trustee. The other plaintiff and co-trustee, Gordon R. Coates, is the brother of defendants, Neligh C. Coates and W. W. Coates, Jr., and all three are the sons of the testator by a former marriage.

The will of the testator bequeathed $50,000 to plaintiffs, in trust, and provided that the net income therefrom was to be paid to plaintiff Beulah M. Coates for life and upon her death the trust was to be divided equally among the three sons. The trustees were given the power to invest in common stocks provided they obtained the consent of the defendants. The sons, in 1950, sought the advice of a stockbroker concerning investment of the fund. This broker wrote to Mrs. Coates: "I have just completed a conference with your sons, and have been authorized to present to you the following investment program covering the principal amount

of $50,000." He then listed a group of shares in four open end mutual investment companies. The letter continued: "The dividends paid by these stocks, including capital gains, in the year 1949 were as follows". Then the letter stated that assuming the payments continued at the same rate in 1950, "the income from the investment would be $2,071.14". Capital gains, as well as cash dividends, were included in this computation. With the consent of the defendants, in 1950, the $50,000 was invested in the stock of four mutual fund companies. For about 2½ years all cash dividend and "capital gains" received from these four companies were paid to Mrs. Coates as income. Early in 1953 Neligh Coates objected to this distribution contending that the "capital gains" were not income and should be credited to the principal of the trust. After this objection the trustees ceased paying the "capital gains" to Mrs. Coates, and, by reason of stock splits and the "capital gains", the trust estate almost doubled in value. Plaintiffs-trustees brought suit for a declaratory judgment to determine whether the accretions, "capital gains", from these four open end investment companies should be credited to income and paid to Mrs. Coates, or be credited to the principal of the trust and eventually divided between the remaindermen, the three sons. In Coates v. Coates, 304 S.W.2d 874, the Supreme Court held that under the particular facts before it, as set out in its opinion, the co-trustees' view was correct, and that these accretions were properly to be treated as income and distributable as such to the widow. It affirmed the trial court's judgment. Reference should be made to that opinion for a complete statement of the facts, issues and law.

Thereafter, in the trial court, both plaintiffs and defendants moved for attorneys' fees and expenses. The defendants originally requested that their allowance be made from the income of the trust, but later amended their motion to request in the alternative that such allowance be made from the corpus. Plaintiffs' motion requested that their allowance be made from corpus. Upon evidence heard, the trial court allowed attorneys' fees and expenses in the sums of $1,500 and $289.82 to defendants' counsel, and $2,600, and $210.70 and $220.80 as attorneys' fees and expenses respectively to plaintiffs' counsel; and the sum of $100 expense money to plaintiff Gordon Coates. It ordered these allowances to be paid out of the corpus or principal of the estate.

Appeals were perfected by the plaintiffs from the award to the defendants and by the defendants from the award to plaintiffs.

Neither side raises any question as to the amount of the fees or expenses allowed nor as to the reasonableness thereof. Cf. Stamm v. Desnoyers, Mo.App., 263 S.W. 2d 45.

Rather on plaintiffs' appeal from defendants' allowance of attorneys' fees and expenses, defendants urge that they as well as the plaintiffs, are entitled to an allowance and that the trial court's allowances to them was proper. On defendants' appeal from plaintiffs' allowance of attorneys' fees and expenses, defendants do not deny that plaintiffs are entitled to an allowance but urge that the trial court erred in making such allowance from the corpus of the trust rather than the income.

On their appeal from defendants' allowance plaintiffs contend that defendants are not entitled to any allowance. They also say that defendants are estopped from objecting to plaintiffs' allowance, and that plaintiffs were entitled to the allowance out of the corpus given to them by the trial court.

■ It is a well-settled doctrine of equity that a trust fund should bear the expense of its own administration. In conformity with this doctrine it is the general rule that where doubt arises as to the true or proper construction of an instrument

by which a trust is created and there are different claimants, the trustee may bring a proper action, such as for a declaratory judgment, setting forth the facts, calling for the claimants to settle their rights before the court, and praying the order of the court in regard to the correct construction of the trust instrument and its proper execution. In such cases the expenses of the litigation, as respects all the parties, and as between attorney and client are properly charged upon the fund. The litigation is regarded as indispensable to the proper administration of the fund, it being necessary that all persons having interests therein or making claims thereto should be made parties, and be afforded an opportunity of being fully heard to the end that their several rights and claims be judicially determined and set at rest. Lang v. Taussig, Mo.App., 194 S.W.2d 743; O'Reilly v. Jackson, Mo.Sup., 269 S.W.2d 631.

■ It is also the general rule where the trust instrument is so ambiguous or difficult to apply and administer that two or more persons may fairly make an adverse claim to the fund or its proper allocation, either may resort to a court of equity for a correct interpretation, and the court is justified in not only assessing the costs of the litigation against the trust estate, but also in allowing reasonable attorneys' fees and expenses payable out of the trust estate both to the defeated and to the successful parties. First National Bank of Kansas City v. Blocksom, Mo.App., 217 S.W.2d 296; City of St. Louis v. McAllister (en Banc) 302 Mo. 152, 257 S.W. 425; Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S.W.2d 39; Bernheimer v. First National Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745; Annotation, 9 A.L.R.2d 1126.

■ While plaintiffs do not dispute the general rule concerning allowances from the trust fund to both the successful and unsuccessful party under proper circumstances, they contend that defendants

were capricious, unwarranted and in bad faith in their "unfounded claim" and wrongfully necessitated the bringing of the suit by the co-trustees. Certainly if that were true the defendants would not be entitled to any allowances. St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S.W.2d 578. As stated in 90 C.J.S. Trusts § 261(9), page 322, "The rule authorizing costs and expenses to be charged against the estate does not apply when the beneficiaries litigate questions capriciously or without reason; if the issues are immaterial or trifling, or if the conduct of a party is vexatious and litigious, or if he raises improper points, or in any way creates unnecessary delay or expense, the court will not only refuse him costs and counsel fees but will order him to pay costs." See also, First National Bank of Kansas City v. Blocksom, supra; Marr v. Marr, 342 Mo. 656, 117 S.W.2d 230.

Reference to the Supreme Court's opinion in this case disclosing the facts and legal questions involved makes it clear that there was a legitimate dispute as to the proper allocation as between corpus and income of the mentioned "capital gains", and that the controversy was over their disposition in accordance with the trust provisions. It was reasonable for someone to institute the litigation to obtain the proper construction and application of the trust instrument. It was necessary to have all the parties before the court in order to obtain a decree that would protect the co-trustees. The trustees who brought the suit were already committed to a theory opposite to defendants' contention, and one trustee had an adverse interest. The trial court entered its order allowing the fees so presumptively it must have felt that it was aided by the various counsel in determining the true meaning of the instrument, and the estate was thereby benefited. We find nothing in the Supreme Court's opinion on which plaintiffs rely that causes us to conclude that defendants acted in bad faith and were pressing unfounded contentions.

Under such circumstances the authority of the trial court to allow reasonable attorney fees and expenses to both plaintiffs and defendants is clear, and we rule against plaintiffs' contentions to the contrary.

■ The second question, which is raised by defendants respecting plaintiffs' allowances, is whether such allowances shall be paid from the principal or income of the trust estate.

■ The rule is that the intention of the creator of the trust as to the source of payment of the expenses of administering the trust controls, and if the trust instrument contains the indication that the creator of the trust intended that the expenses of administering the trust should be paid from income, or on the other hand, from corpus, such intention would prevail. Rossi v. Davis, 345 Mo. 362, 133 S.W.2d 363, 125 A.L.R. 1111, 33 Am.Jur., Life Estates, Remainders, etc., Sec. 425, page 946. Frequently, however, no intention is disclosed, and the source of payment of administration expenses, including court costs and attorney fees, is determined in accordance with the equities of the particular case aided by such general principles as have developed from this type of litigation. The trial court is accorded reasonable discretion in the determination of the source of payment of the allowances as between the corpus and income of the trust. See, generally, Annotations, 9 A.L.R.2d 1132, 1143; 124 A.L.R. 1184; 33 Am.Jur., Life Estates, Remainders, etc., Secs. 427 and 428, pages 950–51. One such principle that applies, where in accordance with the equities, is that attorneys' fees and expenses representing the services of an attorney in the ordinary, periodically recurring operations of administering a trust are chargeable to income while fees and expenses paid an attorney for extraordinary services in connection with the administration of a trust

are paid from corpus. It has been said that this applies where both the life tenants and remaindermen are guiltless of any wrong against the trust and where the point of incidence or allocation of proper expenses must be determined between innocent persons. 33 Am.Jur., Life Estates, Remainders, etc., Sec. 428, page 953.

On this appeal defendants have not asserted that the intent of the creator of the trust was that such expense be paid from income, and no such intent appears upon our examination of the instrument. The allowances in question did not result from the ordinary, periodically recurring operations or administration of the trust but resulted from the extraordinary expense occasioned by the co-trustees applying to the court for instructions and determination of the legitimate dispute as to the proper allocation of the increase. Under such circumstances and in line with the rule discussed above, the trial court has the authority in the exercise of its sound discretion to make the allowance of the questioned attorneys' fees and expenses payable from the corpus of the estate.

It is unnecessary for us to consider plaintiffs' contention that defendants are estopped from now challenging the action of the trial court in allowing the attorneys' fees and expenses to be paid out of the corpus by having in effect encouraged the court to believe it could enter such an order and by not having promptly objected to it, for in any event defendants have not demonstrated any abuse of discretion by the trial court in making the allowances to plaintiffs for attorneys' fees and expenses payable out of the corpus of the estate.

Accordingly, the judgment of the trial court in each of the appeals is affirmed in all respects. It is so ordered.

All concur.