**In re The Matter of the Revocable TRUST OF Carl E. McDONALD.**

**HOME OF HOPE, INC., Respondent,**

**v.**

**Betty L. McDONALD, Appellant.**

**No. 18137.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 4, 1993.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 26, 1993.

Application to Transfer Denied April 20, 1993.

Ron Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for appellant.

Grant W. Scott, Spencer, Scott & Dwyer, P.C., Joplin, Mark W. Curnutte, Logan & Lowry, Vinita, OK, for respondent.

PARRISH, Chief Judge.

This is an appeal by Betty L. McDonald (Betty) from a declaratory judgment entered in an action brought by respondent Home of Hope, Inc. (Home of Hope). The subject of that action was a certain trust indenture. The judgment declared "that in lieu of all provisions made in the Trust for the benefit of Betty Lee McDonald, she shall have and receive the total sum of

TWENTY–FIVE THOUSAND DOLLARS ($25,000.00)." This court reverses.

The trust that is the subject of this proceeding is evidenced by a document entitled "Revocable Trust Agreement." It is dated September 16, 1979 (although the notary public's acknowledgement of the signatures of those signing the instrument states the date of its execution by those parties as October 16, 1979). The trust instrument states that it was entered into "by and between CARL E. McDONALD of Joplin, Jasper County, Missouri, as 'Settlor', and CARL E. McDONALD as 'Trustee' and TED B. EVANS of Carthage, Missouri as 'Successor Trustee.' " It bears the signatures of Carl E. McDonald, as both settlor and trustee, and Ted B. Evans, as successor trustee. It is the same trust that was before this court in *McDonald v. McDonald*, 814 S.W.2d 939 (Mo.App.1991).

As was explained in *McDonald v. McDonald, supra,* Carl E. McDonald and Betty were married at the time the trust was established. Other facts relating to the establishment of the trust and the family and business backgrounds of Carl and Betty McDonald are set forth in detail in that opinion. In order to determine the issues presented by this appeal, this court will rely on the facts set forth in the prior opinion without their restatement. This opinion will supplement those facts by summarizing the dispositive provisions of the trust instrument and the history of certain amendments that Carl made (and one that he attempted to make) to the original trust indenture.

The trust, as originally executed, included provisions for Betty in the event that she survived Carl. She was to have the use for her lifetime of certain residential property that Carl owned prior to his and Betty's marriage. She was to have all the furniture and appliances that were situate in another residence. She was to have a diamond ring that belonged to Carl "for her life only." *McDonald,* 814 S.W.2d at 943. She was to receive $1,000 per month for her lifetime and $2,000 per year reimbursement for travel and vacation expenses. The trust was to pay for sufficient medical insurance to provide coverage in amounts similar to what she had been afforded throughout her marriage to Carl. The trust was to keep in full force a certain policy of insurance on her life. The trust indenture contained the following proviso relative to those benefits:

> ... provided, however, that if she shall be unwilling to accept the provisions herein made in full settlement, satisfaction and payment of all rights accruing to her by reason of my death, then in lieu of all provisions made herein for her she shall have and receive that share of my estate to which she is entitled under our Pre–Nuptial Agreement dated December 6, 1974, being the total sum of Twenty-five Thousand Dollars ($25,000.00).

The three amendments to the trust were as follows:

> The first amendment gave Betty some additional office furniture and equipment and allowed the Trustee to increase the monthly income to Betty ($1,000.00 per month) within his discretion to take into consideration the "present inflationary rate".
>
> The second amendment was executed on November 26, 1983. The second amendment granted Betty a life estate in certain additional tracts of real estate. Betty was to receive the rents and profits from the additional tracts. Betty was made liable or responsible for all taxes, insurance and reasonable costs of maintenance on the additional tracts.
>
> The third amendment was executed on December 23, 1983. The third amendment changed certain legal descriptions but did not otherwise modify or amend the trust indenture.

*Id.*

An attempted fourth amendment of the trust indenture was declared invalid. *Id.* at 951. It was dated February 12, 1987. By the attempted fourth amendment, Carl undertook to eliminate any provision that was for Betty's benefit. *See* 814 S.W.2d at 943. In upholding the trial court's determination that the fourth amendment was invalid, this court explained:

The history of Carl's revocable declaration of trust presents unique circumstances. That declaration did reserve to him the power to amend or revoke the trust indenture. It did provide substantial benefits for Betty. She knew of its provisions before she joined in the conveyances that funded the trust. She did so with reluctance.

The provisions of the trust indenture for the benefit of Betty are of vital importance from both a factual and legal standpoint. Factually, it is obvious Betty acted in reliance upon the provisions for her benefit. The trust would not have been funded without those provisions. "Where the acts of a person induced another to refrain from acting in a particular manner, he is estopped from taking any position inconsistent with his inducement which led to the prejudice of the other person." *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 521 (Mo.App.1985). Legally, the presence of those provisions in the trust indenture is part of the compelling evidence that it was not Carl's purpose and intent to deprive Betty of her marital rights by funding the trust.

*Id.* at 950.

This court then concluded that although Missouri does not recognize that a trust is invalid with respect to the marital rights of a surviving spouse due to an "illusory" retention of control by the settlor, "[n]evertheless, it is not equitable to permit the settlor to change his intent and revoke the provisions of the trust indenture upon the basis of which the trust was funded and provisions which are relied upon to establish that funding the trust was not in fraud of Betty's marital rights." *Id.* This court held that Carl was estopped in his efforts to revoke the provisions that were for Betty's benefit—the fourth amendment—and that the amendment was invalid. *Id.* It is with this background that this court considers the present appeal.

■ Betty's first point on appeal asserts that the trial court erred in declaring that her involvement in the prior case worked a forfeiture of her rights under the terms of the trust. The first point contends that Home of Hope is estopped from so contending, pointing out, among other claims, that "this court held that Carl McDonald could not unilaterally revoke the provisions for Betty's benefit and the Home of Hope, Inc. is, therefore, also estopped from eliminating Betty from the benefits under the trust." This court agrees. Equity regards substance rather than form. *Bates v. Dana*, 345 Mo. 311, 133 S.W.2d 326, 330 (1939). This appeal is, in substance, a replay of the prior case.[1]

For purposes of this issue, Home of Hope stands in the same posture as Carl would stand if he were alive and before this court. Home of Hope derives any interest it has in the trust from Carl's actions, the actions that this court determined Betty relied upon in joining in the conveyances that funded the trust. 814 S.W.2d at 950. Just as Carl was estopped from revoking benefits intended for Betty, Home of Hope is estopped from invoking

---

1. There is an anomaly in Home of Hope's attempt to invoke the in terrorem clause in question. The plain language in the clause states that if Betty is "unwilling to accept the provisions [of the trust] ... in full settlement, satisfaction and payment of all rights accruing to her by reason of [Carl's] death," then she will take such amount as was provided by a prenuptial agreement that she and Carl executed prior to their marriage, "being the total sum of Twenty-five Thousand Dollars ($25,000.00)." Her efforts in the prior case were directed to trying to get the benefits that had been provided for her absent the thwarted effort by Carl to revoke all benefits previously provided by the terms of the trust. She was willing to take the benefits; however, Carl's thwarted fourth amendment left her with the options of accepting $25,000.00, a negligible amount compared to what she would have otherwise received; seeking to set aside the amendment that revoked her benefits; or asserting that the property transferred to the trust was in fraud of her marital rights so as to permit her to claim a "widow's share" of that property through intestate succession. She was successful in getting the determination that she was entitled to receive the benefits provided by the terms of the trust "in full settlement, satisfaction and payment of all rights accruing to her." Her efforts in that regard are now met by Home of Hope's claim that Betty's efforts to enforce those rights manifested an unwillingness to accept them.

what the trial court identified as "the forfeiture provision contained in Article First C. 4. of the Trust." Betty was entitled to receive benefits under the trust. She was likewise entitled to enforce those rights.[2]

Betty's first point is dispositive of the appeal. It is unnecessary to address the other points that she raises. The order of the trial court that the forfeiture provisions contained in "Article First C. 4. of the Trust" be followed and enforced by the successor trustee is reversed.

CROW, P.J., and SHRUM, J., concur.

2. The doctrine of *ubi ius, ibi remedium*—where there is a right, there is a remedy—is a precept of Missouri law. *State v. Kansas City Firefighters Local 42,* 672 S.W.2d 99, 109 (Mo.App.1984).