**In re The Matter of the Revocable TRUST OF Carl E. McDONALD.**

**HOME OF HOPE, INC., Appellant–Respondent,**

v.

**Betty L. McDONALD, Respondent–Appellant.**

**Nos. 18230 and 18245.**

Missouri Court of Appeals, Southern District, Division One.

July 22, 1993.

Monte B. Cable and Gary C. Lentz, Spencer, Scott & Dwyer, P.C., Joplin, Mark W. Curnutte and Donna L. Smith, Logan & Lowry, Vinita, OK, for appellant-respondent Home of Hope.

Ron Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for respondent-appellant Betty L. McDonald.

CROW, Presiding Judge.

Although involving only an attorney fee, the issues presented by these cross-appeals require a conspectus of the litigation. The sources of most facts are *McDonald v. McDonald*, 814 S.W.2d 939 (Mo.App.S.D. 1991), henceforth referred to as *"McDonald–I,"* and *Matter of Trust of McDonald*, 849 S.W.2d 150 (Mo.App.S.D. 1993), henceforth referred to as *"Mc-*

*Donald–II.*" Anyone preferring a detailed account of the epic may peruse those opinions. In the present opinion, we set forth only the facts pertinent to the issues raised by the instant appeals.

In 1979, Carl E. McDonald established an inter vivos revocable trust. *McDonald–I,* 814 S.W.2d at 943. The trust provided certain benefits for his wife, Betty, whom he had married in 1974. *Id.* at 942. At Carl's insistence, Betty executed deeds conveying several tracts of real estate to the trustee. *Id.* at 943.

During his lifetime, Carl executed four amendments to the trust indenture: May 15, 1980; November 26, 1983; December 23, 1983; February 12, 1987. *Id.* In the fourth amendment, Carl purported to eliminate any interest or benefit Betty had under the trust. *Id.*

Carl died June 18, 1988. *Id.* at 942. After Carl's death, the successor trustee filed a petition in the Circuit Court of Jasper County praying that he be allowed to resign and that a second successor trustee be appointed. *Id.* at 944. We henceforth refer to that proceeding as "the circuit court proceeding." The Circuit Court appointed C. Ross Rhoades as second successor trustee. *Id.*

Probate of Carl's estate was commenced in the Probate Division of the Circuit Court of Jasper County. *Id.* We henceforth refer to that proceeding as "the probate proceeding." Carl's widow, Betty, was appointed Personal Representative in the probate proceeding. *Id.*

On February 17, 1989, in the circuit court proceeding, Betty filed a motion seeking an order declaring the trust void or voidable, that the trust was revoked during Carl's lifetime, or in the alternative that the property transferred to the trust was transferred in fraud of her marital rights. *Id.* The trustee filed an answer opposing Betty's motion. *Id.*

On February 21, 1989, Betty, as Personal Representative of Carl's estate, filed in the probate proceeding a petition to determine title and right to possession of 32 items of property. *Id.* The petition averred, *inter alia,* that some of the properties had reference to the trust which the Personal Representative believed was void or voidable, and such properties were not properly placed in the trust even if it were valid. *Id.*

Lawyer Ronald E. Mitchell represented Betty in both proceedings.

The circuit court proceeding and the probate proceeding were thereafter consolidated for trial and disposition. *Id.* at 945.

On February 1, 1990, the lawyer for trustee Rhoades filed a motion for approval of trustee fees and attorney fees. The motion averred, *inter alia,* that Betty was challenging the validity of the trust. The motion also pled that the trustee and his lawyer had expended considerable time supervising the affairs and property of the trust and defending various suits against the trust in Missouri and Kansas.

On February 6, 1990, Betty, through lawyer Mitchell, filed a "Response" to the motion for approval of trustee fees and attorney fees. The Response alleged Home of Hope, Inc., was primary beneficiary of the trust, and the trustee and his lawyer had been "acting as adversaries for the Home of Hope." Therefore, said the Response, payment of fees for the trustee and his lawyer should come from Home of Hope. Alternatively, the Response prayed that if the trust be found valid, the trust be responsible for all attorney fees incurred by Betty.

The next day, February 7, 1990, trustee Rhoades, lawyer Mitchell, and Grant Scott, counsel for Home of Hope, appeared in court and discussed the attorney fee issue. This parley supplies the basis for the attorney fee award which is the subject of these appeals. We shall set forth the evidence regarding this incident *infra,* when we address the assignments of error. In the meantime, we continue the narrative in chronological order.

The issues raised by Betty's motion of February 17, 1989, in the circuit court proceeding, and by her petition of February 21, 1989, as Personal Representative in the probate proceeding, were tried in 1990, sometime after the February 7, 1990, incident referred to in the preceding para-

graph. The trial court entered judgment holding: (1) the trust and first three amendments thereto were valid, (2) the trust assets were not subject to Betty's marital rights, (3) the fourth amendment to the trust indenture was void, (4) Betty must account to the court and the trustee, and should receive certain compensation, (5) the trust must pay Betty's lawyer $25,-764.86, (6) the trust must hold Betty harmless from certain creditors, (7) Betty's challenge to the validity of the trust did not affect her rights as a beneficiary under it. 814 S.W.2d at 941–42.

Three appeals were taken from that judgment—by Betty, trustee Rhoades, and Home of Hope, respectively. *Id.* at 942.

In *McDonald–I*, this Court affirmed holdings 1, 2 and 3. 814 S.W.2d at 951. This Court further held the issues adjudicated by holdings 4, 6 and 7 were not before the trial court. *Id.* at 950. Those holdings were reversed. *Id.* at 951. As to holding 5, this Court ruled there was nothing in the record to support the award of attorney fees for Betty; consequently, that holding was reversed. *Id.*

Thereafter, further activity occurred in the trial court. Home of Hope moved for a declaratory judgment enforcing a "forfeiture provision" in the trust indenture against Betty. *McDonald–II*, 849 S.W.2d at 150–51. The provision stated, in substance, that if Betty were unwilling to accept the benefits provided her by the trust, she should have the share of Carl's estate to which she was entitled by a prenuptial agreement, i.e., $25,000. *Id.* at 151.

In response to Home of Hope's motion for declaratory judgment, Betty filed a "cross-claim and counterclaim" for attorney fees. It alleged, *inter alia*:

2. The trust assets ... required an extensive amount of legal work and effort and it would have been wasteful and duplicative for [the trustee's attorney and Betty's attorney] to work on every issue until the validity of the trust was established.

. . . .

4. On February 7, 1990 the trustee and the attorney for the Home of Hope ... agreed that said attorney fees would be paid from the trust assets if the trust was held to be valid. Likewise Betty ... agreed to pay the attorney fees of the attorney hired by the trustee if the trust was declared to be invalid. Such agreement was fair and reasonable because the efforts of both attorneys protected and safeguarded the assets of the trust and thereby benefited the trust including, but not limited to the following:

a. Removal of a claim of federal government to a lease with many years remaining on the most significant asset held by the trust.

b. Dealing with the Internal Revenue Service on a substantial federal tax lien.

c. Appearing and defending lawsuits filed by various parties against the assets of the trust.

d. Dealing on a daily basis with tenants, lessees, materialmen and others regarding assets of the trust.

5. ... Betty ... relied upon the agreement of the trustee and the Home of Hope ... and until a filing of the appeal [in *McDonald–I*] had no notice or knowledge that the Home of Hope ... and the trustee would not abide by their agreement.

For reasons unrevealed by the record, the trial court heard Home of Hope's motion for declaratory judgment separately from Betty's claim for attorney fees, adjudicating Home of Hope's motion first. The trial court entered judgment enforcing the "forfeiture provision" against Betty.

On appeal by Betty, this Court reversed. This Court noted Betty's efforts in *McDonald–I* were directed toward obtaining the benefits provided her by the trust. *McDonald–II*, 849 S.W.2d at 152 n. 1. The opinion explained:

... Carl's thwarted fourth amendment left [Betty] with the options of accepting $25,000.00, a negligible amount compared to what she would have otherwise received; seeking to set aside the amendment that revoked her benefits; or asserting that the property transferred to the trust was in fraud of her marital

rights so as to permit her to claim a "widow's share" of that property through intestate succession. She was successful in getting the determination that she was entitled to receive the benefits provided by the terms of the trust.... *Id.*

While the appeal in *McDonald–II* was pending in this Court, the trial court held an evidentiary hearing May 27, 1992, on Betty's claim for attorney fees. Betty appeared by lawyer Mitchell, who had represented her throughout the litigation. Home of Hope appeared by its lawyer, Grant Scott (who had been present in court with Mitchell and trustee Rhoades during the February 7, 1990, episode referred to earlier in this opinion).

Mitchell presented Scott as a witness. Scott's testimony included this:

Q. ... Were you present during a discussion between Mr. Rhoades and I concerning an agreement with regard to attorney fees?

A. Yes, I was.

Q. And did you make any comments ... with regard to the issue of attorney fees?

A. I recall making two comments.... One, that I didn't have any authority one way or another as to any agreement on attorney fees and second, I made a comment also that I always believe attorneys should be paid.

Q. Do you recall Mr. Rhoades and coming to an agreement with regard to attorney fees?

A. Yes, I do.

Q. And what is your recollection of what that agreement was?

A. My understanding that Ross Rhoades made an agreement to pay your attorney fees out of the trust.

Mitchell then presented a deposition of trustee Rhoades taken February 3, 1992, by lawyers for Home of Hope. The deposition included this:

Q. I draw your attention to February 7, 1990, a hearing or conference with Judge Killebrew.... Were you present?

A. I was.

. . . .

Q. Was there an agreement made as to attorney's fees that day?

A. Yes, I believe there was.

Q. Who were the parties of that agreement?

A. I can tell you the people that took part in the discussion, myself and Mr. Mitchell and Grant [Scott] was also present. My recollection is that the judge was also present during most of our discussions if not all. We first went on the record and started to make the usual announcements ... and someone, I don't know who, advised him of all the issues that we had a problem with.... He went off the record and said do you guys want to discuss this deal on attorney's fees for awhile and we said yes and we proceeded to discuss it between the three of us....

. . . .

Q. Will you tell me what the outcome of those negotiations were?

A. It's my understanding that we came to an agreement but rather than litigate not only the issue of our fees and securing but also Mr. Mitchell's fees and securing them back and forth between whether or not the trust was valid, and rather than litigate physical possession of numerous items of property both real and personal during the pendency of the lawsuit that we would try to put our collective heads together to both preserve and protect those properties, make full accountings to each other as to any rents or profits received on them during the pendency of the action, and to ensure that not only the trust and my attorney were left holding the bag but also that Mrs. McDonald had a fair chance to litigate her issue, but if the trust was held valid we would be responsible to her for reasonable attorney fees; likewise, if the trust was held invalid that the property if it ended up in the probate estate would be responsible or ultimately Betty would be responsible.

Q. Who agreed to this?

A. ... I'm sure that any "agreement" was between myself as the trustee and Mr. Mitchell on behalf of Betty.... I don't know if [Grant Scott] acquiesced is the proper word. I know that after we thrashed it out for a considerable amount of time that I certainly had the feeling that he concurred in it. He voiced no specific objections.... We were faced with an inordinate amount of property both real and personal. Carl's business dealings were terrible. There were so many loose ends out there that you would have needed a staff of lawyers and paralegals just to take the calls, run down what property we thought we owned, make sure that somebody was either protecting the property, not burning it up, paying rent on time, that we weren't getting foreclosed on a piece of property we didn't even know we owned. We were simply trying to preserve and protect whatever we had and we didn't know exactly what we had until some time later.

Rhoades then described some of the problems he encountered in identifying, marshalling and protecting the assets. They included payments due on debts secured by liens, dealing with creditors, handling litigation, caring for horses and determining who owned them, collecting rent, and answering inquiries about Carl's properties. Summing up, Rhoades explained:

[W]e didn't have the luxury of hindsight so that when you say for the benefit of the trust or the benefit of Betty, we were both trying to preserve and protect whatever property we could discover until the court made a ruling as to which side it was going to fall on.

The evidence presented by Mitchell at the May 27, 1992, hearing was not limited to the testimony of lawyer Scott and the deposition of trustee Rhoades. Mitchell himself testified, and he also presented a deposition taken of him February 3, 1992, by lawyers for Home of Hope. Additionally, Mitchell presented Exhibits A and B.

Mitchell identified Exhibit A as an itemized statement of services performed by him and associates in his firm from June 28, 1988, through June 5, 1990. Exhibit A showed total hours of 313.2, a total fee of $23,741.50, and expenses of $236.36.

Mitchell identified Exhibit B as "a summary of the major items that I performed for the benefit of the trust." At the foot of Exhibit B, this assertion appears: "I estimate that I have spent well over 400 hours since 1988 on the above matters in addition to the issues involving attacking and construing the Trust."

The trial court set forth its rulings in an order signed June 8, 1992, and filed June 18, 1992. The order reads, in pertinent part:

[T]he Court finds that the Trustee agreed to pay Ron Mitchell's attorney fees. The Court further finds that Ron Mitchell expended considerable time and effort on behalf of the Trust which benefited the Trust and helped preserve the assets of the Trust. Based upon the testimony and exhibits, the Court finds that some of the time expended by Ron Mitchell was for the purpose of construing or attacking the Trust and the Court will not award those fees to Mr. Mitchell. The Court finds that approximately $7,500.00 in Mr. Mitchell's time was involved with litigating the Trust.

The Court finds that at least $30,-000.00 in time (400 hours at $75.00 per hour) and expenses of $236.36 directly benefited the Trust and benefited the Trust by more than $30,000.00.

It is therefore ORDERED that Ron Mitchell have judgment against the Trust in the sum of $30,236.26.

Home of Hope brings appeal 18230 from the above order.[1] Betty brings appeal

---

**1.** An attentive reader will note the order appealed from commands the *trust*, not Home of Hope, to pay attorney fees to Mitchell. Yet, it is Home of Hope, not the trustee, that brings appeal 18230. Betty does not question the right of Home of Hope to appeal. In *McDonald–I*, this Court characterized Home of Hope as "residuary beneficiary of the trust." 814 S.W.2d at 941. There is a Missouri case holding beneficiaries of a trust are parties aggrieved by an award of attorney fees against the trust in favor of an adverse party, and thus may appeal. *St. Louis*

18245 from it. We first address appeal 18230.

■ Home of Hope presents three points relied on, the first of which asserts that "because Mitchell's services primarily involved an attack upon the trust, Mitchell's fees cannot be charged against the trust estate."

In support of this point, Home of Hope cites several cases holding that where a person sues to destroy a trust, he is not entitled to an award of attorney fees from it. Such cases include *Trautz v. Lemp*, 334 Mo. 1085, 72 S.W.2d 104, 108[3] and [4] (banc 1934); *Nelson v. Mercantile Trust Co.*, 335 S.W.2d 167, 173–74[10, 11] (Mo. 1960); *Thomson v. Union National Bank in Kansas City*, 291 S.W.2d 178, 184[11] (Mo.1956). Home of Hope also directs our attention to a passage in *Trautz* declaring a trust estate is not liable for attorney fees of a person who aids in the recovery or preservation of trust assets if his efforts are "a mere act of a volunteer." 72 S.W.2d at 109[6]. Home of Hope singles out this exchange from the deposition of trustee Rhoades:

Q. Did you as trustee ever employ anyone to do legal work on behalf of the trust other than Abe [Paul]?

A. I've got a partner that does work and I'm sure that some of the time that we expended is also going to be billed under his initials, if that's what you mean. Aside from what I've told you it's my recollection of our agreement there in Judge Killebrew's office but, no, I never specifically called Mr. Mitchel [sic] or any other attorney for that matter and said I want to employ your services at X number of dollars an hour to perform a specific task for the trust.

Our review of this judge-tried case is governed by Rule 73.01(c), Missouri Rules of Civil Procedure (1993), as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it

is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. When determining the sufficiency of the evidence, we accept as true the evidence and inferences from it favorable to the trial court's judgment and disregard all contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989).

We agree with Home of Hope's contention that Betty, represented by lawyer Mitchell, attacked the validity of the trust. We recognized this in *McDonald–I*, 814 S.W.2d at 950.

However, evidence presented by Mitchell on Betty's behalf at the May 27, 1992, hearing demonstrated Mitchell performed services that protected and preserved assets ultimately adjudicated by *McDonald–I* to belong to the trust.

Excerpts from the deposition of trustee Rhoades, quoted *supra*, describe the predicament in which he, Betty and their lawyers found themselves after Carl's death. Because of the disarray of Carl's business affairs and the formidable issues that remained unresolved until *McDonald–I* three years after Carl's death, some immediate, effective and economical method of identifying, marshalling and preserving the diverse and scattered assets was imperative.

In the deposition of Mitchell presented at the May 27, 1992, hearing, he explained how the trustee and Betty, as Personal Representative, handled the dilemma:

... everybody recognized that if the trust was declared to be valid all of the assets from which to pay attorney fees would be in the trust, and if it was declared invalid all the assets would be in the estate....

... [trustee Rhoades] and [his lawyer] are in Neosho, I'm in Joplin, and you can't make all those people that are calling call to Neosho. They're going to be calling me anyway, all the creditors and all the land problems....

... there were several issues about which at the time we're talking about we

---

*Union Trust Co. v. Fitch*, 354 Mo. 638, 190 S.W.2d 215, 217[1] (1945). As no issue is raised

regarding Home of Hope's standing to appeal, we decline to address the subject *sua sponte*.

didn't know who was going to end up owning it and I dealt with those issues. In some cases [the trustee's lawyer] dealt with those issues....

... if the trust ... was declared to be valid somebody had to deal with [creditors] and if it wasn't me then it's got to be the trust attorney but at the point that we're talking about we didn't know who was going to end up doing it and again because I'm here in Joplin and most of the creditors were around here, they called me....

... There was so many things to do in this that [the trustee's lawyer] certainly wasn't concerned about me doing something to collect money and then however it turned out, where that money went, that's where it would go....

... being that there was a multitude of problems because of the way Carl conducted his business, that it was wasteful to have both attorneys doing everything together in tandem and that it seemed logical while this thing was pending to reach an accommodation.

We hold there is ample evidence to support the trial court's finding that trustee Rhoades agreed the trust would pay lawyer Mitchell's fees for work performed by him in identifying and preserving assets if the trust was ultimately held valid and such assets ended up as trust property. We further hold there is ample evidence to support the trial court's finding that Mitchell performed services that benefited the trust and helped preserve assets ultimately adjudicated to be trust property.

Accordingly, as to such services, it begs the question to assert a litigant who seeks to destroy a trust is not entitled to attorney fees from the trust. The order awarding fees to Mitchell makes it clear that such fees were not to compensate him for services performed for Betty in attacking the trust, but instead for services which preserved and protected assets that became trust property. Accordingly, the rule relied on by Home of Hope in its first point does not apply to the fees awarded by the

challenged order. Home of Hope's first point is meritless.

Its second point reads:

Any agreement by the trustee to pay Mitchell's fees was an improper agreement, a breach of the trustee's fiduciary duty, and beyond the trustee's authority. Therefore, the order directing payment of Mitchell's fees from the trust estate must be stricken.

In support of this point, Home of Hope cites *St. Louis Union Trust Co. v. Conant*, 499 S.W.2d 761, 769 (Mo.1973), for the proposition that parties cannot agree that counsel fees and expenses be paid from a trust when not properly chargeable against it. Home of Hope also relies on *In re Sternberg's Estate*, 204 S.W.2d 761, 764 (Mo.1947), for the proposition that one in a fiduciary capacity can bind an estate for payment of attorney fees only insofar as the services are necessary or beneficial to the estate.

Home of Hope concedes the trust indenture here granted the trustee power to employ attorneys "in his sole and absolute discretion." However, says Home of Hope, trustee Rhoades never "employed" Mitchell. Furthermore, argues Home of Hope, trustee Rhoades could not properly agree to pay Mitchell's fees because Mitchell and his client, Betty, were challenging the validity of the trust.

Home of Hope's conclusion that trustee Rhoades never employed Mitchell is a specious interpretation of Rhoades' testimony. While Rhoades conceded he never retained Mitchell to perform a specific task for the trust at an agreed hourly rate, Rhoades confirmed he agreed the trust would pay Betty reasonable attorney fees for services by her lawyer in identifying and preserving assets that ended up as trust property. Given the quandary in which Rhoades and Betty found themselves as events unfolded following Carl's death, the record is sufficient to support an inference that it was cost-effective to proceed the way they did instead of litigating with each other regarding who should manage, preserve, and collect income from, each individual asset during the pendency of *McDonald–I.*

■ Where a trustee is vested with sole discretion in a matter and the trust instrument supplies no objective standards by which to evaluate the reasonableness of his conduct, a court must not interfere unless the trustee, in exercising his power, wilfully abuses his discretion or acts arbitrarily, fraudulently, dishonestly or with an improper motive. *American Cancer Society, St. Louis Division v. Hammerstein*, 631 S.W.2d 858, 863[2] (Mo.App.E.D.1981). No such misconduct is shown here.

Home of Hope's contention that trustee Rhoades could not properly bind the trust for attorney fees of a party attacking it has been answered in our rejection of Home of Hope's first point. As emphasized there, the fees awarded by the trial court were not to compensate Mitchell for his efforts on Betty's behalf in challenging the validity of the trust. Home of Hope's second point is denied.

■ By its third point, Home of Hope maintains the evidence does not support "the trial court's finding that $30,000 of Mitchell's time and $236 in expenses benefitted the [trust]."

■ We begin our consideration of this point by recognizing a trial judge is considered an expert in determining the proper amount of compensation for legal services. *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21[17] (Mo. banc 1980); *McPherson Redevelopment Corp. v. Shelton*, 807 S.W.2d 203, 207[7] (Mo.App.E.D.1991); *Industry Financial Corp. v. Ozark Community Mental Health Center*, 778 S.W.2d 413, 417[6] (Mo.App.S.D.1989). However, in each of those three cases the attorney fee awarded by the trial judge was for services in only that case, and the judge awarding the fee was the judge before whom the case was tried. Consequently, the judge making the award was familiar with the litigation and the work done by the lawyer receiving the fee.

Here, the trial judge who awarded the attorney fee was the judge who had presided over *McDonald–I* and *McDonald–II*, hence he was familiar with that litigation. However, the services performed by lawyer Mitchell for Betty in that litigation were not for the benefit of the trust. In *McDonald–I*, Betty attacked the trust; in *McDonald–II*, she resisted Home of Hope's effort to invoke a "forfeiture provision" against her.

In its order awarding the fee, the trial court made it clear no compensation was awarded Mitchell for work "construing or attacking the Trust." Instead, the fee was for services performed by Mitchell which benefitted the trust and helped preserve its assets. Those services were not performed in front of the trial judge.

According to evidence presented by Mitchell—particularly Exhibit B—those services included: (1) obtaining a release from the United States government of a 99-year lease on a parcel of real estate; (2) defending foreclosure and declaratory judgment actions in Kansas; (3) negotiations with bank officials about a foreclosure on a farm in which the trust had an equity interest; (4) negotiations with the Internal Revenue Service about a tax lien on property held by the trust; (5) phone calls, conferences and correspondence with realtors about sale or lease of various properties in the name of the trust; (6) numerous contacts with an appraiser hired by the trust to appraise trust property; (7) countless contacts by officials and others about the status and condition of trust property and delinquent taxes on it; (8) conferences with the trustee's lawyer regarding many properties held by the trust; (9) numerous contacts with accountants about tax returns and accountings due by the trustee; (10) negotiations on a "chat contract" on property held by the trust; (11) numerous contacts regarding demolition of a Holiday Inn; (12) reviewing various insurance policies to determine their validity; (13) involvement in "the Heotis suit"; (14) negotiating "the Braum's transaction"; (15) the "Empire condemnation"; (16) a suit against one Morton; (17) a suit by one Edwards on "the lease on the skating rink"; and (18) dealing with over twenty creditors of the trust.

Lawyer Mitchell assured the trial court he spent "well over 400 hours" on the above matters. However, in neither his

deposition nor his live testimony did Mitchell provide a date-by-date account itemizing precisely what services he performed, the amount of time required, or an explanation of exactly how such work benefitted the trust. This is in stark contrast with *McPherson*, 807 S.W.2d 203, upon which Betty relies. There, the lawyers presented testimony and detailed records showing time expended upon particularized work. 807 S.W.2d at 207.

Here, Mitchell admitted that after June, 1990, he did not have "very good time records." Therefore, he had "gone back and tried to reconstruct it." While we have no reason to doubt the sincerity of Mitchell's claim that he spent over 400 hours on work that benefitted the trust, the brief he authored for Betty as respondent in appeal 18230 concedes Exhibit B merely "outlines" such work. While Exhibit A provides more detail (it identifies specific dates and describes in general terms what occurred), Exhibit A does not specify whether the work was to attack the trust or to identify, preserve and protect its assets. Nothing in the record enables us to correlate the entries on Exhibit A with the outline on Exhibit B.

Betty cites *Roberts v. McNary*, 636 S.W.2d 332, 338 (Mo. banc 1982), for the proposition that a trial court is considered an expert in allowing an attorney fee, and the burden is on the one challenging the fee to demonstrate the award is so unreasonable as to indicate indifference and lack of proper judicial discretion.[2] Betty asserts Home of Hope has failed to make such a showing here. However, *Roberts*, like the other attorney fee cases cited earlier, was one in which the fee was awarded for services in only one case and the trial judge who made the award was the judge before whom the case was tried. Here, there is no showing that the trial judge was familiar with any of the 18 matters outlined by Exhibit B, *supra*, as to which Mitchell avowed he performed over 400 hours of work that benefitted the trust.

In sum, we cannot extract from the record and articulate in this opinion any particular, precise evidence supporting the trial court's finding that Mitchell performed 400 hours of legal services that directly benefitted the trust. While there is ample evidence to support the trial court's finding that Mitchell performed legal services from which the trust derived benefit, the $30,000 award is obviously based on Mitchell's "estimate" that he spent over 400 hours on the matters outlined by Exhibit B. We hold that is insufficient to support the award.

 That does not mean recovery is foreclosed. Although the order must be reversed, it appears Mitchell may be able, by combing his files and time slips for the matters listed on Exhibit B, to compile an accurate and detailed account of the services he performed, together with a verifiable total of the time he expended. Where a claimant prevails in the trial court and an appellate court reverses because of insufficient evidence, the preference is for remand for a new trial. *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786[3] (Mo. banc 1989). Reversal without remand is appropriate only if the appellate court is persuaded the claimant cannot make a submissible case on retrial. *Id.* We hold remand for a new trial is the right disposition here.

Before leaving appeal 18230, we offer two observations.

First, although it was Betty who filed the claim for attorney fees, the trial court awarded the fees directly to Mitchell. He is not a party. Home of Hope points this out in the argument portion of its brief. However, none of Home of Hope's points relied on assert this anomaly as a basis for reversal.

 The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal and no longer an issue in the case. *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405[3] (Mo. 1964). In any event, as the order is being reversed, the question is moot.

2. A holding on another point in *Roberts* was overruled by *Keller v. Marion County Ambu-*

*lance Dist.*, 820 S.W.2d 301, 304–05 (Mo. banc 1991).

Second, as reported earlier in this opinion, in *McDonald–I* this Court reversed the portion of the judgment wherein the trustee was ordered to pay Betty's lawyer $25,-764.86. 814 S.W.2d at 951. This Court held there was nothing in the record to support the award. *Id.* No remand was ordered for retrial of the attorney fee issue.

■ In its "Answer" to Betty's present claim for attorney fees, Home of Hope averred the claim was barred by res judicata and collateral estoppel. Res judicata is an affirmative defense and must be supported by evidence. *Snyder v. Jensen*, 281 S.W.2d 819, 822 (Mo.1955). The same is true of collateral estoppel. *Arthur v. Evangelical Deaconess Society of the City of St. Louis, Inc.*, 615 S.W.2d 438, 444–45[5] (Mo.App.E.D.1981). At the evidentiary hearing May 27, 1992, Home of Hope presented no evidence to support either defense, and Home of Hope does not raise either defense in this Court. Consequently, we need not decide whether either defense would have been successful.

■ We now turn to Betty's appeal, number 18245. She presents one point relied on, which reads:

> The trial court erred in not awarding Betty McDonald all of her attorney fees, including attorney fees expended in the litigation of the validity of the trust because the trustee agreed to pay such fees and the trust instrument was so ambiguous that some litigation was required in order to resolve the many issues presented and therefore the court should have allowed attorney fees out of the trust estate.

In support of this point, Betty relies primarily on *Coates v. Coates*, 316 S.W.2d 875 (Mo.App.1958). There, a question arose during administration of a trust as to whether capital gains should be paid to a beneficiary as income or added to the trust corpus. The co-trustees brought a declaratory judgment suit against the beneficiaries to obtain an answer. After that suit had been adjudicated, all parties moved the trial court for attorney fees and expenses. The trial court granted all requests, ordering that the awards be paid from corpus.

Each party appealed from the other's award. Affirming all awards, the appellate court explained:

> It is ... the general rule where the trust instrument is so ambiguous or difficult to apply and administer that two or more persons may fairly make an adverse claim to the fund or its proper allocation, either may resort to a court of equity for a correct interpretation, and the court is justified in not only assessing the costs of the litigation against the trust estate, but also in allowing reasonable attorneys' fees and expenses payable out of the trust estate both to the defeated and to the successful parties.

*Id.* at 878[2].

We find no help for Betty in *Coates*. In *McDonald–I*, she did not seek interpretation of an ambiguity in the trust indenture. Instead, as explained *supra* in this opinion, she sought an order declaring the trust void or voidable, that it was revoked during Carl's lifetime, or in the alternative that the property transferred to the trust was transferred in fraud of her marital rights. None of that relief constituted interpretation of an ambiguity in the trust instrument.

In deciding Home of Hope's first point in appeal 18230, *supra*, we noted case law that where a person sues to destroy a trust, he is not entitled to an award of attorney fees from it. That principle applies to Betty's claim for attorney fees for services performed by lawyer Mitchell in quest of the relief sought in *McDonald–I*.

The only other case cited by Betty is too factually different from the instant case to deserve discussion. We hold the trial court did not err in denying attorney fees to Betty for services rendered by Mitchell in *McDonald–I*.

A more troublesome question is presented as to fees for services performed by Mitchell on Betty's behalf in *McDonald–II*. There, as we have seen, Betty defended against an attempt by Home of Hope—not the trustee—to obtain a declaratory judgment enforcing a "forfeiture provision" in the trust indenture against her. Home of Hope won in the trial court, but Betty prevailed on appeal.

The record does not demonstrate the work done for Betty by Mitchell in *McDonald–II*. Consequently, there was no evidence before the trial court to support any award for those services. Additionally, our scrutiny of Betty's "cross-claim and counter-claim" leaves us uncertain as to whether she sought judgment in the trial court for those services.

With the case in this posture we need not decide whether Betty is entitled to reimbursement from the trust for her attorney fees in *McDonald–II*. If Betty believes she is, she can endeavor to establish her claim on remand. Her present appeal requires us to decide only whether she was entitled to attorney fees from the trust for Mitchell's services in *McDonald–I*. For the reasons set forth earlier, we hold she was not.

The order awarding lawyer Mitchell judgment against the trust for $30,236.26 is reversed and the cause is remanded to the trial court for a new trial on Betty's "cross-claim and counter-claim" for attorney fees. Costs in appeal 18230 are taxed half against Home of Hope and half against Betty. Costs in appeal 18245 are taxed against Betty.

PARRISH, C.J., and SHRUM, J., concur.